

RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

C.A. NO.: 3:00 CV 0973 (AHN) (HBF) 4: 29 2003 NOV

US DISTRICT COURT
BRIDGEPORT CT

| | |
|---|---|
| TIMOTHY HAYES, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COMPASS GROUP USA, INC., | ) |
| d/b/a EUREST DINING SERVICES | ) |
| and CARY ORLANDI, | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Plaintiff Timothy Hayes has failed to identify any evidence that his former employer,

Compass Group USA, Inc. ("Compass"), terminated his employment for any reason other than

Hayes' abominable job performance, which is well documented.   Although Hayes claims that he

was terminated because of his age (47 years old), and to deny him severance benefits to which he

claims entitlement under ERISA, he has identified no evidence that Cary Orlandi, Regional Vice

President ("Orlandi"), who made the decision to terminate him, harbored any bias toward Hayes

because of his age or acted with any intention to deny him benefits.  Likewise, there is no

evidence that could support Hayes' additional claims alleging defamation and negligent or

intentional infliction of emotional distress.  Because there is no evidence from which a

- 1 -

reasonable person could conclude that the defendants acted unlawfully in terminating Hayes's employment, Compass's motion for summary judgment should be granted in its entirety. [1]

## II.    Undisputed Facts

1. Compass provides on-site cafeteria and restaurant-style dining services to businesses and other institutions throughout the United States. At the time of his termination on June 1, 1998, Hayes was 47 years old and employed as a Regional Manager in the Northeast Region of Compass' Eurest division. Approximately one and a half years earlier, in January 1996, defendant Cary Orlandi was promoted to the position of Regional Vice President of Eurest. (Orlandi Depo. I, p. 29-30, attached at Tab A to Counsel Aff.[2]) When Orlandi assumed the position of Regional Vice President, Hayes, a District Manager at the time, began reporting to him. (Orlandi Depo. I, p. 102-104, Tab A). Hayes had been a District Manager for approximately 18 years. (Hayes Depo. I, pp. 62-63, attached at Tab B to Counsel Aff. [3]) In or about June 1996, Orlandi promoted Hayes to the position of Regional Manager. (Orlandi Depo. I, p. 138-139, Tab A; Hayes Depo. I, p. 63-64, 77, Tab B). Until his promotion, Hayes had "relatively little" contact with Orlandi. (Hayes Depo. I, pp. 76, Tab B). Hayes, who was born on September 30, 1950, was 46 years old when promoted. (see Profile and Change Form for 12/96, COM 0045-0047, attached at Tab C to Counsel Aff.).

2. Although in 1996, it appeared to Orlandi that Hayes was performing competently as a District Manager, during 1997 Orlandi was able to observe Hayes' performance as a

---

[1] Count I: Alleged Violation of Age Discrimination in Employment Act ("ADEA"); Count II: Alleged Age Discrimination in violation of Connecticut Fair Employment Practices Act; Count III: Alleged violation of Employee Retirement Income Security Act ("ERISA"); Count IV: Alleged Intentional Infliction of Emotional Distress; Count V: Alleged Negligent Infliction of Emotional Distress; Count VI: Alleged Defamation.
[2] "Orlandi Depo. I" refers to the deposition of Cary Orlandi on March 9, 2001.
[3] "Hayes Depo. I" refers to the deposition of Timothy Hayes on March 8, 2001.

Regional Manager more closely. (Orlandi Depo. I, p.151, Tab A). As a result, Orlandi became aware of performance problems on Hayes' part. Id.

3.     On August 5, 1997, Orlandi authored a memorandum to Hayes, inquiring about Hayes' "poor performing accounts." (see Memorandum from Orlandi to Hayes, dated August 5, 1997, COM 0031-44, COM 0342-343, attached at Tab D to Counsel Aff.). Orlandi observed that thirteen (13) of the accounts under Hayes' authority were in need of improvement and were showing increased sales but decreased profits. Id.

4.     On August 13, 1997, Compass received the results of a customer satisfaction study showing that Dow Jones, an account under Hayes' authority, was unhappy with the service it was receiving from Compass. Orlandi wrote to Hayes to express his disappointment with the results of the customer survey and Hayes' handling of problem accounts. (See Memorandum from Orlandi to Hayes, dated August 13, 1997, COM 0025-30, attached at Tab E to Counsel Aff.).

5.     Soon after, in September 1997, Orlandi observed more serious problems with Hayes' performance, some of which concerned his accounting practices. On September 24, 1997, Orlandi authored another memo to Hayes, describing what he viewed to be improper accounting practices and warning Hayes that such practices "could be considered grounds which would call for immediate termination." (Memorandum from Orlandi to Hayes, dated September 24, 1997, COM 0021-24, attached at Tab F to Counsel Aff.). This letter was soon followed with another letter on September 30, 1997, detailing Orlandi's observations of deficiencies in Hayes' performance, including poor management of the District Managers under his authority, and warning Hayes that such conduct might result in termination. (Memorandum from Orlandi to Hayes, dated September 30, 1997, COM 0006, attached at Tab G to Counsel Aff.).

3

6.      In October 1997, other accounts under Hayes' authority, Electric Boat and J.C. Penney, came under Orlandi's scrutiny because of financial problems at the accounts and client dissatisfaction.  On October 9, 1997, Orlandi authored a memo describing his suggestions for improving the Electric Boat account.  (Memorandum from Orlandi to Hayes, October 9, 1997, COM 0162-163, attached at Tab H to Counsel Aff.).  Hayes acknowledged the problems with the account in a memo to Orlandi the following week.  (Memorandum from Hayes to Orlandi, dated October 13, 1997, COM 0174-175, attached at Tab I to Counsel Aff.)  Also in October, J.C. Penney informed Compass that it was dissatisfied with the service that Compass was providing and was considering putting the contract out to bid.  (See Letter from Hayes to Orlandi and Bob Kelley, dated October 14, 1997, COM 0018, attached at Tab J to Counsel Aff.).

7.      By December 1997, Hayes had lost six accounts.  Orlandi was dissatisfied with Hayes' operating results and unexplained discrepancies in Hayes' financial reporting, leading Orlandi to rate Hayes' overall performance for the year as "Approaching Expectations", the performance rating below "competent" and above "marginal."  (See Performance Evaluation for Timothy Hayes, dated December 15, 1997 COM 0015-17, attached at Tab K to Counsel Aff.; see also Memorandum for Orlandi re: Operating Results, dated December 16, 1997, COM 0014, attached at Tab L to Counsel Aff.).

8.      Hayes' performance did not improve in 1998.  In January, Orlandi continued to observe and comment on discrepancies in Hayes' financial reports.  (Memorandum from Orlandi to Hayes, dated January 12, 1998, attached at Tab M to Counsel Aff.).

9.      In March 1998, James Carothers, the president of the Eurest division, and Cary Orlandi intervened when another account under Hayes' authority, Middlesex Community College ("Middlesex"), terminated Compass' services and complained bitterly about the quality

of service, or lack thereof, provided to the account. (See Letter from Carothers and Orlandi to Robert K. Berg, March 19, 1998, COM 0164-166, attached at Tab N to Counsel Aff.). At the time, Hayes claimed that Middlesex was disappointed to discontinue Compass' services but that it had to do so because of a lack of support in the state contract system. (see Memorandum from Hayes to Orlandi, dated March 25, 1998, COM 0382, attached at Tab O to Counsel Aff.). This, however, is clearly not the case, as shown by the Declaration of Robert K. Berg, the Dean of Middlesex Community College, who stated:

> I can say without reservation that Tim Hayes failed to properly manage the food services at Middlesex Community College, and that he was completely unresponsive to my repeated pleas to make basic improvements to these food services. Mr. Hayes's lack of responsiveness and offensive personal style were so extreme that I decided to get the college's food from a local deli and to stop using Eurest.

(Berg Declaration, ¶ 3, dated September 5, 2003, attached at Tab P to Counsel Aff.).

     10.    On April 13, 1998, Orlandi issued Hayes a final warning, describing Hayes' current performance problems at specific accounts and the need for Hayes' performance to improve immediately. (Memorandum from Orlandi to Hayes, dated April 13, 1998, COM 0007-9, attached at Tab Q to Counsel Aff.).

     11.    Soon after this warning to Hayes, Compass received a letter from Compass' Food Service Directors for the Connecticut schools, complaining that Hayes had an extramarital affair and illegitimate child with one of his subordinates, and that subsequently he had forced one of his District managers to promote her, by-passing more qualified candidates. (See Letter to Canteen[4] from Connecticut Schools Food Service Directors, dated May 27, 1998, COM 0173, attached at Tab R to Counsel Aff.).

---

[4] Compass acquired Canteen Corporation in or about 1995.

12.     On June 1, 1998, Orlandi terminated Hayes' employment. (See Letter from Orlandi to Hayes, dated June 1, 1998, COM 0374-379, attached at Tab S to Counsel Aff.).  As he testified at deposition, Orlandi made the decision to terminate Hayes, doing so because of Hayes' "poor performance", which consisted of: "[n]ot telling the truth. Poor financial performance. Dissatisfied clients. Continued problems with the accounts ongoing. Continued counseling that showed little or no improvement." (Orlandi Depo. I, pp. 140-141, Tab A).

13.     At the time of his termination, Hayes rejected Compass' offer to pay him severance in the amount of five weeks' salary in exchange for his agreement to execute Compass' standard release of claims.  (Hayes Depo. III, p. 66, attached as Tab T to Counsel Aff.)[5].

14.     Soon after he was terminated, Hayes testified that he contacted Joan Wedekind, his former supervisor, inquiring about whether she might assist him in finding another position within the company.  According to Hayes, Ms. Wedekind spoke to Mr. Hayes again several days later to tell him that she would be unable to find him another position, because Orlandi had "poisoned the well." (Hayes Depo. II, pp. 336, Tab U).[6]   Hayes testified that he did not ask Ms. Wedekind what was meant by this statement. Id.

15.     Catherine Cape, a forty-year old female was hired to replace Mr. Hayes as Regional Manger.  She assumed most of Hayes' responsibilities after he was terminated. (Orlandi Depo. I, pp. 90, 139-140, Tab A).[7]

16.     At the time Orlandi terminated Mr. Hayes, the two men were the same age: 47. (Compass Group Employee Data Sheet of Cary Orlandi, attached as Tab Z to Counsel Aff.)

---

[5] "Hayes Depo. III" refers to the deposition of Timothy Hayes, Volume III, taken September 16, 2003.
[6] "Hayes Depo. II" refers to the deposition of Timothy Hayes, Volume II, taken July 5, 2001.
[7] Being over 40 years of age, Ms. Cape, like Mr. Hayes, was in the class of people protected by the ADEA.

17.     Mr. Hayes has failed to offer any evidence or even allege that he was anything other than an at-will employee of Compass. (Complaint, Tab Y).

### III.     Argument

Compass is entitled to summary judgment dismissing Hayes' complaint "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As demonstrated by the evidence uncovered during discovery in this case, Hayes has failed to proffer the evidence necessary to prove any of his six claims against Compass. As such, Hayes has failed to establish evidence of a trialworthy dispute of fact and Compass should be granted judgment as a matter of law.

### A.     Hayes Has Failed To Proffer Evidence That Could Prove He Was Terminated Because Of His Age

"Under the Age Discrimination in Employment Act ("ADEA"), it is 'unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Roge v. NYP Holdings, Inc., 257 F.3d 164, 164 (2d Cir. 2001), citing 29 U.S.C. §623(a)(1). Connecticut similarly prohibits an employer from terminating an employee on the basis of his age. See Conn. Gen. Stat. 46a-60 et seq. Neither federal nor state law, however, prohibits an employer from terminating an employee whose performance is unsatisfactory, as was the case with Timothy Hayes. Hayes has failed to identify any evidence from which one could conclude that the decision to terminate his employment was due to a discriminatory motive on the part of Cary Orlandi, or that the decision to terminate Hayes' employment had anything to do with his age.

7

Hayes has offered no direct evidence of discriminatory bias against him on the basis of his age, nor has he proffered circumstantial evidence of such bias by showing that the reason given for his termination – poor performance – is lacking in credence. See Roge v. NYP Holdings, Inc., 257 F. 3d 164, 167-168 (2d Cir. 2001); citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."); Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) ("Reeves clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.").

## 1.     Hayes Has Failed To Dispute That He Was Terminated For Poor Performance

Because there is no genuine dispute of fact that Compass terminated Hayes for poor performance, his claim of age discrimination fails as a matter of law. The Second Circuit "analyze[s] ADEA discrimination (and retaliation) claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." Jetter v. Knothe Corp., 324 F. 3d 73, 75-76 (2d Cir. 2003). "Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of [age] discrimination by showing that: (i) at the relevant time the plaintiff was a member of the protected class;  (ii) the plaintiff was qualified for the job;  (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that

8

the plaintiff was replaced by someone 'substantially younger.'" Roge v. NYP Holdings, Inc.,
257 F.3d 164, 168 (2d Cir. 2001) (affirming summary judgment to employer where employee
failed to show that employer's nondiscriminatory reasons for discharge were illegitimate or
pretextual) (internal citations omitted).

"A plaintiff must first present a prima facie case of discrimination.  If the plaintiff does
this, discriminatory animus is presumed and the burden shifts to defendant to articulate a
legitimate non-discriminatory reason for the employment decision.  If defendant does so, the
plaintiff must show that the articulated non-discriminatory reason for defendant's action is in fact
a pretext for discrimination." Jetter, 324 F.3d at 75-76 (internal citations omitted) (affirming
summary judgment dismissing age discrimination claims where no rational fact-finder could find
that plaintiff had been fired because of his age); see also Roge, 257 F.3d at 167 (when employer
presents nondiscriminatory reason for termination, "the presumption of discrimination drops out,
and the burden shifts back to the plaintiff to prove that the legitimate reasons offered by the
defendant were not its true reasons, but were a pretext for discrimination.")

Compass has proffered ample evidence; from both within and without the company, that
Hayes' job performance was considerably lacking and failed to improve, despite a series of
warnings from the Regional Vice President.  (Orlandi Depo. I, p. 141-142, Tab A).  There is no
evidence that these criticisms and complaints were unfounded, much less that they were
manufactured in an effort to terminate Hayes' employment because he was 47 years old (the
same age as Orlandi).  In fact, Hayes admits that he has no documentation to support his
uncorroborated allegation that Orlandi "manipulated" financial reports from Hayes to make them
appear inaccurate.  (Hayes Depo. II, pp. 211-214, Tab U; Hayes Depo. III, pp. 52-54, Tab T).
Even assuming that Hayes' performance was competent enough to satisfy his burden of proving

a prima facie case of age discrimination, which is doubtful, Hayes has not refuted that Orlandi

terminated him because, in Orlandi's view, Hayes was failing to perform adequately.  In the

absence of evidence that Orlandi's given reasons for terminating Hayes' employment are lacking

in credence or legitimacy (and in the absence of direct evidence of age bias toward Hayes on the

part of Orlandi, discussed *infra*), Hayes has no hope of proving his claims at trial.  As in <u>Roge</u>,

therefore, Hayes' claims should be dismissed as a matter of law.

> **2.      Hayes Has Failed To Rebut The "Same Actor Inference" Attributable
> To Cary Orlandi, Who Previously Promoted Hayes To Regional
> Manager**

According to Hayes' own testimony, Regional Vice President Cary Orlandi, whom Hayes

now claims terminated him because of his age, is the very person who promoted Hayes into the

Regional Manager's position in June 1996.  (Hayes Depo. I, p. 62-64, 76-77, Tab B).  The fact

that Orlandi promoted Hayes two years before terminating him establishes the inference – which

Hayes has failed to rebut - that Orlandi's decision to terminate Hayes was not influenced by

Hayes' age: "'some factors strongly suggest that invidious discrimination was unlikely.  For

example, where the person who made the decision to fire was the same person who made the

decision to hire, it is difficult to impute to [him] an invidious motivation that would be

inconsistent with the decision to hire.'  We conclude that this remains a highly relevant factor in

adjudicating a motion for summary judgment on an ADEA claim."  <u>Schnabel v. Abramson</u>, 232

F.3d 83, 90 (2d Cir. 2000) (affirming summary judgment against age discrimination claim where

person who fired plaintiff was the same person who hired him three years earlier, and plaintiff

offered no evidence of age-related comments or criticisms on the job and no evidence that

plaintiff's age was discussed or considered by decision-makers) <u>quoting</u> <u>Grady v. Affiliated

Central, Inc.</u>, 130 F.3d 553 (2d Cir. 1997).

Orlandi promoted Hayes into the Regional Manager position in June 1996, and later terminated him in June 1998. This two-year span is within the period to which the same actor inference applies. Id.; see also Schnabel, *supra*. (three years); Choate v. Transport Logistics Corp., 234 F. Supp. 2d 125, 130-131 (D. Conn. 2002) (18-month period between hiring and firing establishes same actor inference for purposes of summary judgment in age discrimination claim). These undisputed facts, together with the absence of any other evidence suggesting age bias toward Hayes, establish a presumption, which Hayes has failed to rebut, that Orlandi's motives in terminating Hayes' employment were legitimate and had nothing to do with Hayes' age.

### 3. There Is No Evidence Of Discriminatory Bias Against Hayes Or Other Employees On The Part Of Orlandi Or Compass.

Hayes has tried to shore up his claim that unlawful age bias motivated the decision to terminate his employment by claiming that Compass, and Orlandi in particular, have engaged in a pattern and practice of terminating older employees. In an effort to support this claim of pattern and practice, Hayes has claimed that the following employees were the victims of age discrimination at Compass: Brian Jendrzejczyk, George Swenson, Philip Canning, Saverino Correalle, Joseph Wawrzynski, Anthony Manganello, Mark Katona and Wayne Patick. (Hayes Depo. II, pp. 239-244, Tab U; see also Plaintiff's Responses to Defendants' Second Set of Interrogatories, No. 7, attached at Tab W. "Statistical data may be submitted to show a disparity in outcome between groups, but to make out a prima facie case, the statistical disparity must be sufficiently substantiated to raise an inference of causation." Rogers v. First Union Nat'l Bank, 2003 WL 1989502, *6 (D.Conn. 2003)(quoting Malave v. Potter, No. 01-6263, Slip Op. at 1487 (2nd Cir. Oct. 2, 2002). In Rogers, the District Court held that the plaintiff had failed to submit sufficient evidence demonstrating disparate outcomes based on the age of the employee. Id.

Hayes' testimony makes clear that his conclusions about Orlandi's – and Compass' - alleged practice of terminating "older" employees are founded upon ambiguous, vague and unsupported speculation.  As the Court found in <u>Rogers</u>, the supposed statistical evidence of a pattern or practice of discrimination based on age in this case is insufficient to defeat summary judgment.

First, Hayes admits that he has nothing more than anecdotal information about "statistical" evidence of Compass' employment practices that might explain why Orlandi, who promoted him, would terminate him because of his age. (Hayes Depo. I., pp. 78-79, Tab B).  In fact, the information that Compass has compiled demonstrates that since 1996 Compass has employed District and Regional Managers over the age of 40 in far greater numbers than those under 40.  (<u>See</u> D-Confidential SL3920-SL3937, attached as Tab V to Counsel Aff.).  For example, out of the 764 Compass employees that held a District and/or Regional Manager position nationwide since January 1, 1996, only 167 were under the age of 40.  <u>Id.</u>  The discharge ratios for those over 40 are the same as for those under 40.  <u>Id.</u>

Second, Hayes's recollections of Cary Orlandi's statements and conduct fall far short of allowing the conclusion that Orlandi has expressed some bias against employees on the basis of age.  When asked about statements by Orlandi that reflected such bias, Hayes identified three types of remarks having to do with "the new image or qualities that the new district managers were going to have to adhere to", which were, "[a]s far as personal grooming, they had to display, I guess you'd say a large degree of physical fitness; they had to be - - have the capacity for unending work hours; they had to have the education, the personal grooming, that was no longer - - or was at a higher standard that what was being currently displayed within Eurest."  (Hayes Depo. II, p. 232-233, Tab U).  "Stray remarks suggestive of impermissible bias do not constitute evidence that discrimination played a part in the employer's decision." <u>Id.</u>, *citing*

Haskell v. Kaman Corp., 743 F. 2d 113, 120 (2d Cir. 1984) (company president's description of two older employees as "old ladies" and approving references to younger employees as "young turks" were not probative of age discrimination); Smith v. Flax, 618 F. 2d 1062, 1066 (4th Cir. 1980) (statements by supervisor that employer's "future lay in its young" personnel held to be merely "truisms" not probative of discriminatory purpose); Smith v. Firestone Tire and Rubber Co., 875 F. 2d 1325, 1330 (7th Cir. 1989) ("[Stray] remarks, ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decision-maker in issue"); Gartland v. Hermetic Seal Corp., 1990 WL 127529, *2 (D. Mass. 1990) (supervisor's statement that "we should get bright young people in" and that he wanted to "get rid of deadwood" did not permit inference that plaintiff's discharge was motivated by age bias). Hayes admits, however, that none of these characteristics, taken individually, has anything to do with age. (Id. at 233-237) Rather, Hayes testified it is only his personal belief that the people who satisfy these qualities are younger. Id. When asked whether he could "identify any statements by anyone other than Mr. Orlandi that . . . shows the Compass Group had a policy of getting rid of older employees", Hayes responded: "[a]gain, I'd have to qualify that and say I didn't ever say that I saw or heard Cary [Orlandi] make a specific comment . . . ." (Id. at 263).

Nor has Hayes offered evidence that Orlandi terminated other individuals because of their ages, as set forth below.

*Hayes' Testimony About Brian Jendrzejczyk*

Although Hayes has claimed that Jendrzejczyk was the victim of age discrimination on the part of Orlandi, he admits that Jendrzejczk, a District Manager, was not performing his job adequately and was terminated for poor performance. (Hayes Depo. II, pp. 223-228, 237-239,

Tab U). Hayes has offered no factual basis for his general conclusion that Jendrzejczyk's age had anything to do with the termination of his employment. Id.

*Hayes' Testimony About George Swenson*

Although Hayes alleges that Swenson, like Jendrzejczyk and others, was terminated because of his age, at deposition, Hayes admits that he does not believe that Cary Orlandi played any role in the decision to terminate Swenson, (Hayes Depo. I, p. 35, Tab B; Hayes Depo. II, pp. 239-240, Tab U), and that he has no "specific evidence" that age was a factor in the decision to terminate Swenson. Id.

*Hayes' Testimony About Joseph Wawrzynski,*

Wawrzynski is another of the individuals whom Hayes had earlier identified as a victim of age discrimination, yet Hayes testified that he has no specific knowledge of Wawrzynski's job performance or evidence that age was a factor in the decision to terminate Wawrzynski's employment, "other than the pattern in developing his termination." Id. at 241-242.[8]

*Hayes' Testimony About Saverino Correalle*

Mr. Correalle is another of the individuals whom Hayes has identified as a victim of age discrimination on the part of Compass, but as with the others, Hayes concedes he has no evidence that age was a factor in the decision to terminate Mr. Correalle. (Hayes Depo. II, pp. 242-243; Tab U).

*Hayes' Testimony About Wayne Patick*

Wayne Patick is another of the individuals whom Hayes has identified as a victim of age discrimination at Compass. At deposition, however, Hayes admitted that he has no specific reason to believe that Orlandi's (alleged) dislike of Patick had anything to do with Patick's age.

---

[8] Wawrzynski affirmatively testified that he believed his termination had to do with factors other than age. See *infra.*

(Hayes Depo. II, p. 243-246, Tab U).  He testified that the only basis for his allegation is that "[Patick's treatment] fits a similar pattern as myself and Joe and Brian and George Swenson, and now Phil Canning and a number of others. . . .  I'm not sure whether statistical evidence would bear it out; however it's certainly a fact that it happened." (Id. at 246).

*Hayes' Testimony About Mark Katona*

Despite the fact that Mark Katona is another individual whom Hayes had earlier alleged to be a victim of age discrimination at Compass, Hayes conceded at this deposition that he does not believe Orlandi played a role in the decision to terminate Katona.  (Id., at 248).  Hayes further admitted that he has no specific evidence that the decision was based on age.  (Id., at 249).

## B.  Hayes Has Failed To Offer Evidence That Compass Violated ERISA

Hayes alleges that "the defendant's actions in discharging [him] . . . were motivated, in part, by an intention to interfere with [Hayes'] attainment of benefits to which he would otherwise have become entitled under the defendant's severance policy." (Complaint, ¶ 29, attached at Tab Y to Counsel Aff.).  Even if Compass's severance guidelines might be considered an employee welfare benefit plan falling within the scope of ERISA (which Compass disputes), Hayes' claim fails as a matter of law because he has offered no evidence that the decision to terminate his employment was motivated by an effort to deny him such benefits.

Hayes' claim is premised on the following ERISA provision:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C.A. §1140. In order to state a claim under §1140, a plaintiff must allege: "1. prohibited employer conduct; 2. taken for the purpose of interfering; 3. with the attainment of any right to which the employee may become entitled." Romero v. SmithKline Beecham, 309 F.3d 113, 119 (3d Cir. 2002) (affirming summary judgment against ERISA claim where employee's vague allegations of malicious termination failed to establish that employer violated §1140 of ERISA) (internal quotes omitted). As in Romero, Hayes' failure to produce evidence that he was discharged to deny him severance benefits should dispose of his claim as a matter of law. "A party opposing a motion for summary judgment must 'go beyond the pleadings' and demonstrate that a reasonable fact finder could return a favorable verdict. Romero, 309 F.3d at 119; *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). (Hayes Depo. III, pp. 60-66, Tab T).

As with the analysis of age discrimination claims, Hayes' failure to refute Compass' legitimate and non-discriminatory reasons for terminating his employment dooms his ERISA claim as a matter of law. See MacKay v. Rayonier, Inc., 75 F. Supp. 2d 22, 29 (D. Conn. 1999) (granting summary judgment on employee's claim that he was terminated to deprive him of retirement benefits where employee failed to dispute employer's legitimate reason for termination); see also Rush v. United Technologies, Otis Elevator Div., 930 F.2d 453, 457 (6th Cir. 1991) (dismissing ERISA claim at summary judgment). The Court in Rush held that "where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him." Id. The court reached the same conclusion in Mackay, *supra*, allowing the employer's motion for summary judgment dismissing a plaintiff-employee's allegation that he

16

was terminated to deprive him of benefits protected by ERISA: "in response to [the employer's] initial showing that the reason for [the employee's] termination was poor judgment in relation to [the employee's sexual contact with a new employee and subordinate, the employee] has utterly failed to come forward with any specific facts showing that a genuine issue of material fact exists that deprivation of his ERISA benefits was the real motivation behind the firing." Mackay v. Rayonier, Inc., 75 F. Supp. 2d 22, 29 (D. Conn. 1999). Hayes has come forward with no facts that might cast some doubt on whether Orlandi genuinely terminated him for poor performance, much less any facts showing that Orlandi made this decision to deprive him of severance benefits. As in Mackay, therefore, Hayes' claims should be dismissed as a matter of law.

### C.    The Evidence Does Not Support Hayes' Claims Alleging Intentional Or Negligent Infliction Of Emotional Distress.

#### 1.    Intentional Infliction of Emotional Distress

Evidence of each of the following elements, none of which Hayes has satisfied, are necessary to maintain a claim for intentional infliction of emotional distress: (1) the actor intended to inflict the emotional distress or knew or should have known that emotional distress was a likely result of his or her conduct, (2) the conduct was extreme and outrageous, (3) the defendant's conduct was the cause of the plaintiff's distress, and (4) the emotional distress sustained by the plaintiff was severe. See Petyan v. Ellis, 200 Conn. 243, 253 (1986) (affirming directed verdict dismissing employee's claim for intentional infliction of emotional distress). In Petyan, the court found that an employer's report to the employment security division that it discharged the employee for unsatisfactory performance, including fraud and lying, could not be considered extreme and outrageous. "The rule which seems to have emerged is that there is liability for conduct exceeding *all bounds* usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Id., at

254, n. 5 (emphasis in original).  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."  Appleton v. Board of Educ. of Town of Stonington, 254 Conn. 205, 211 (2000) (internal quotes omitted).

Hayes has failed to identify any conduct toward him that a reasonable person might consider to be extreme and outrageous or exceeding all bounds tolerated by decent society. "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.  Only where reasonable minds disagree does it become an issue for the jury."  Appleton, 254 Conn. at 210 (affirming summary judgment dismissing claim for intentional infliction of emotional distress because employer's alleged conduct in making condescending comments to plaintiff and having police escort plaintiff off school premises "may have been distressing and hurtful", but did not "constitute extreme and outrageous conduct"); see also Ziobro v. Connecticut Institute for the Blind, 818 F. Supp. 497, 502 (D. Conn. 1993) (granting summary judgment where defendant's conduct could not reasonably be considered "extreme and outrageous"); Reed v. Signode Corp., 652 F. Supp. 129 (D. Conn. 1986) (granting summary judgment on grounds that employer's denial of leave of absence to employee with cancer could not be considered extreme and outrageous).  In Ziobro, for example, the court held that even if it were true that the defendant: (1) failed to conduct an adequate investigation before firing plaintiff, (2) was unjustified in discharging the plaintiff and (3) intended to cause emotional distress, the alleged conduct was "not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Ziobro, 818 F. Supp. at 502; quoting Restatement (Second) of Torts § 46, comment (d) (1965).  The only evidence that

Hayes has offered concerning stress arising from Orlandi's conduct is a conversation he had with Orlandi in which Orlandi instructed him to discuss with a client, Kimberly Clark, the need for the client to make payments to Compass that had not been properly billed. (See Hayes Depo. II, pp. 273-274, Tab U). This is not the type of conduct that Connecticut recognizes as "extreme and outrageous." As such, it is not sufficient to overcome summary judgment. In response to Compass' second set of interrogatories, Hayes stated that the conduct, which caused him emotional distress, occurred when he was terminated, although he has failed to describe this conduct in any detail.

Neither has Hayes offered any evidence that he suffered from any severe emotional distress as a result of any conduct on the part of his former employer. "Whether a defendant's conduct is extreme and outrageous is ordinarily a question of fact, but summary judgment may be appropriate where the plaintiff fails to allege specific facts which a reasonable jury could find constituted extreme and outrageous conduct." Almonte v. Coca-Cola Bottling Co. of N.Y., Inc., 959 F. Supp. 569, 575 (D. Conn. 1997) (granting summary judgment dismissing claim for intentional infliction of emotional distress where plaintiff failed to present evidence that he suffered severe emotional distress). In Almonte, the court held that the plaintiff's allegations of sleeplessness, depression and anxiety, which were unaccompanied by medical treatment or counseling, failed to establish the existence of the severe emotional distress necessary to overcome summary judgment, "absent some evidence that plaintiff suffered these symptoms to an extraordinary degree." Id., at 576. Hayes testified that he has never sought or received any counseling or medical treatment in connection with emotional difficulties or distress relating to his job (or otherwise). (Hayes Depo. II, pp. 271-273, Tab U). He testified that he had chest pains on one occasion, after a stressful conversation in which Orlandi was making some

demands upon his job performance. (Hayes Depo. II, pp. 272-273, Tab U; Hayes Depo. III, pp. 67-70, Tab T). Under the standards articulated by Almonte, his evidence fails to constitute evidence of severe emotional distress necessary to overcome summary judgment.

### 2.    Negligent Infliction of Emotional Distress

In order to establish a triable claim for negligent infliction of emotional distress, Hayes has the burden of proving: (1) the defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress, and (2) that distress, if it were caused, might result in illness or bodily harm. See Parsons v. United Technologies Corp., 243 Conn. 66, 88 (1997). Hayes has failed to proffer evidence that could satisfy either element. "Termination of employment, even where it is wrongful, is not enough alone to sustain a claim for negligent infliction of emotional distress." Mendes v. Jednak, 92 F. Supp. 2d 58, 64 (D. Conn. 2000) (granting summary judgment against defamation claim that employee was wrongfully terminated and denied reinstatement.) "Connecticut recognizes a claim for negligent infliction of emotional distress in the employment field where it is 'based upon unreasonable conduct of the defendant in the termination process'. . . . This type of claim 'focuses on the manner of the discharge; whether the employer's conduct in the termination was unreasonable, not whether the termination itself was unreasonable.'" Perillo v. Perkin-Elmer Corp., 1998 WL 846737, *3 (D. Conn. 1998)(internal citations omitted)(granting summary judgment dismissing claim where employee failed to proffer evidence of unreasonable conduct by employer during act of termination). Although he has claimed that he was terminated because of his age, Hayes has failed to identify anything about the manner in which he was terminated, which a reasonable person might regard as presenting an unreasonable risk of causing emotional distress that could,

in turn, result in illness or bodily harm. Id. (see Plaintiff's Answers to Compass' Second Set of Interrogatories, No. 10, Tab W).

Because Hayes has failed to offer proof of conduct that might be considered either extreme and outrageous or that might present an unreasonable risk of causing emotional distress, and has failed to offer proof of severe emotional distress caused by any such conduct, his claims for both intentional and negligent infliction of emotional distress should be dismissed as a matter of law.

### D.    Hayes' Defamation Claim Fails As A Matter Of Law

Hayes claims that the defendants are liable for defamation arising from statements allegedly made about him by (1) Cary Orlandi at the time of Hayes' termination, and (2) Compass in the form UC-61, submitted to the state of Connecticut. Hayes' claim for defamation fails because there is no evidence that (1) anyone at Compass has made false and defamatory statements about him, and (2) that any statements about his performance and the reasons for his termination were not privileged (by showing evidence of malice). In order to maintain a claim for defamation, Hayes would need to offer some evidence of a statement or communication that: (1) is defamatory (i.e. a communication that would cause the victim to be hated, ridiculed, and held up to scorn and contempt by reasonable and respectable members of the community); (2) is published to a third party; (3) specifically identifies or refers to Hayes; and (4) is false. See Strada v. Connecticut Newspapers, Inc., 193 Conn. 313 (1984). Additionally, there must be proof that the defendants statements were not privileged:

> [L]iability for defamation requires proof 'that the defendants published false statements that harmed the [plaintiff], *and that the defendants were not privileged to do so.*' Connecticut affords a qualified privilege to intracorporate communications. There are two facets to the defense of privilege. ' The occasion must be one of privilege, and the privilege must not be abused. . . . Whether the privilege was abused . . . depends upon whether there was malice. . . .'

21

<u>Malik v. Carrier Corp.</u>, 202 F.3d 97, 108 (2d Cir. 2000) (affirming summary judgment dismissing defamation claim where employee failed to present evidence of malice or falsity) (internal quotations omitted)(emphasis supplied); <u>citing</u> <u>Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 234 Conn. 1, 29 (1995) ("[s]uch communications . . . are necessary to effectuate the interests of the employer in efficiently managing its business.")

Hayes alleges that the statements giving rise to his claim for defamation were "[t]he statements made by the defendants on multiple occasions indicate that the plaintiff's work performance was poor and that he was terminated for said reasons on June 1, 1998," which are grounds for a defamation claim. (Complaint, ¶27, Tab Y). In an effort to discover further information about this allegation, Compass served the following interrogatory on Hayes:

> Please identify each allegedly defamatory statement or communication made about the plaintiff, including without limitation:
>
> (a) the substance of the statement or communication;(b) the identity of the speaker;(c) the identity of the recipient(s) of the statement or communication;(d) the date of the defamatory statement or communication; and (e) the identity of any witnesses to the statement or communication.

(Defendants' Second Set of Interrogatories, No. 9, attached as Tab X to Counsel Aff.). In response, Hayes stated: "on or about June 1, 1998 Mr. Orlandi made false statements directed at plaintiff to Ms. Joan Wedekind regarding Plaintiff's employment and job performance. Additionally, defendants have defamed the plaintiff in the form of a UC-61." (see Plaintiff's Responses to Defendant's Second Set of Interrogatories, No. 9, Tab W). Joan Wedekind is an employee of Compass to whom Hayes reported for approximately one year. (Hayes Depo. I, 57, Tab B) Hayes testified that Ms. Wedekind, his former supervisor, told him after he was terminated that she would be unable to help him secure another position within Compass because Mr. Orlandi had "poisoned the well." (Hayes Depo. II, pp. 336, Tab U) Hayes has identified no other statements or communications to support his claim.