UNITED STATES DISTRICT COURT
DISTRICT OF CONECTICUT

| | | |
|---|---|---|
| Timothy Hayes<br>        Plaintiff | : | CIVIL ACTION NO. 3: 00cv0973  39 |
| | : | |
| versus | : | |
| | : | |
| COMPASS GROUP USA, INC., d/b/a | : | |
| EUREST DINING SERVICE and | : | |
| CARI ORLANDI | : | January 5, 2004 |
|        Defendants | : | |

PLAINTIFF TIMOTHY HAYES' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Timothy Hayes ("Mr. Hayes"), through his legal counsel, hereby files his Memorandum of Law in Opposition to Defendants', Compass Group USA, Inc., d/b/a Eurest Dining Services ("Compass") and Mr. Cary Orlandi ("Mr. Orlandi") Motion for Summary Judgment.  Mr. Hayes, a former Compass employee of over twenty four (24) years, was one of many long-term employees who were targeted, singled out, and terminated because of their age.  As the accompanying documents demonstrate, Compass and Mr. Orlandi used a litany of tools at their disposal to methodically and deliberately displace a number of its older work force.  Be it by an alleged company restructure, a reorganization, or by way of fabricating job deficiencies, the end result was the same -the elimination of a long term employee and the hiring and/or retention of a younger, less qualified individual.  Additionally, there are disputed facts in connections with Plaintiff, Tim Hayes' claim for age discrimination, the severance benefits that he was entitled to but for defendants' discriminatory practices in violation of ERISA, his claim for defamation, and his claim for intentional infliction of emotional distress.  Thus, summary judgment is not appropriate and a jury trial is necessary as to these causes of action.


WHEREFORE, for the reasons stated herein and in the accompanying Memorandum of Law, plaintiff respectfully requests that this Court deny Defendants' Motion.



**ORAL ARGUMENT IS REQUESTED**

PLAINTIFF
TIMOTHY HAYES

_____
Stephen F. McEleney
McEleney & McGrail
His Attorneys
363 Main Street
Hartford, Connecticut  06106
Federal Bar No. ct04073

## CERTIFICATION

I HEREBY CERTIFY, that a copy of the foregoing Motion in Opposition to Defendants' Motion for Summary Judgement has been mailed on this 5th day of January, 2004 to the following counsel of record:

*Christopher Kenney, Esq.*
*Margaret Paget, Esq.*
*Sherin and Lodgen LLP*
*100 Summer Street*
*Boston, MA  02110*

By    _____
      Stephen F. McEleney, Esq.

*UNITED STATES DISTRICT COURT*
*DISTRICT OF CONNECTICUT*

| | |
|---|---|
| *Timothy Hayes*        : | CIVIL ACTION NO.: 3: 00cv0973 |
|     *Plaintiff*     : | |
|                  : | |
| *versus*           : | |
|                  : | |
| *COMPASS GROUP USA, INC., d/b/a*   : | |
| *EUREST DINING SERVICE and*     : | |
| *CARY ORLANDI*           : | |
|     *Defendants*       : | |

**PLAINTIFF TIMOTHY HAYES' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Timothy Hayes, ("Mr. Hayes" or "plaintiff") through his legal counsel, hereby files his Memorandum in Opposition to Defendants', Compass Group USA, Inc., d/b/a Eurest Dining Services ("Compass Group") and Cary Orlandi ("Mr. Orlandi" or "Defendant Orlandi") (collectively "Defendants"), Motion for Summary Judgment.

*Facts.*

*Plaintiff's Accomplishments at Defendant Company*

1.      Mr. Hayes was born on September 30, 1950. (Complaint ¶13).

2.      On June 28, 1973, Hayes applied for a position with Compass Group, then doing business as Interstate United (COM 0001, COM 0084-0087). On or about July 27, 1973 Hayes was hired by the defendant for the Chef Manager Position. (COM-0092 and ¶'s Dep, Vol. I, pp50 L.25). Mr. George Swenson ("Mr. Swenson") was the individual who initially hired Mr. Hayes (Swenson Aff'd ¶11).

3.      Plaintiff held the position of Chef Manager for three (3) years until he was promoted to the General Manager position. (¶'s Dep. Vol. I, pp.51, L.2-5). Plaintiff held the position of General Manager for one (1) year, until in or about 1977 when Mr. Hayes was again

1

promoted, this time to District Manager. (¶'s Dep. Vol. I, pp. 51, L. 4-7).

4.      Mr. Swenson held the position of Regional Vice President and for the majority of the time that Mr. Hayes was a District Manager he reported to Mr. Swenson (¶'s Dep. Vol. I, pp. 57, L.6-20). Mr. Swenson worked directly with plaintiff for over twenty (20) years. (Swenson Aff'd ¶16). In January 1995, plaintiff's job performance was evaluated by Mr. Swenson and given a rating of "commendable". (¶'s Dep. Vol. I pp. 68, L.23-25; ¶'s Dep. Vol. I pp. 67, L.23-25). As Mr. Hayes' direct supervisor for a number of years, Mr. Swenson never had any issues with plaintiff's job performance or work ethic. (Swenson Aff'd ¶15).

5.      Ms. Joan Wedekind ("Ms. Wedekind") succeeded Mr. Swenson as Regional Manager. (¶'s Dep. Vol. I pp. 57, L.19-20). Consequently, Mr. Hayes' reported to Ms. Wedekind for approximately one (1) year (¶'s Dep. Vol. I pp. 57, L.12-15).

6.      In December 1995, plaintiff was evaluated by Ms. Wedekind and was given an overall rating of "commendable +" (¶'s Dep. Vol. I pp. 71, L.4; ¶'s Dep. Vol. I pp. 72, L.24-25; COM 0049-0052). Mr. Orlandi, having been appointed Regional Vice President for the Northeast earlier that year. reviewed and approved plaintiff's appraisal on April 13, 1996 (COM0049-52).

7.      At the time that Mr. Orlandi signed off on Ms. Wedekind's evaluation, he affirmatively acknowledged that Mr. Hayes was promotable to Regional Food Manager and/or Regional Vice President, . (¶'s Dep. Vol. I pp. 76, L.23-25; COM 0049-0052).

8.      On or about June 1996, Mr. Orlandi made the decision to promote plaintiff to the position of Regional Manager, no doubt based on Ms. Wedekind's recommendation. (¶'s Dep. Vol. I pp. 76-77). At that time, Mr. Orlandi had relatively little contact with Mr. Hayes (¶'s Dep. Vol. I pp. 76-77). As Regional Manager, Mr. Hayes had the overall responsibility for food operations in Connecticut, Western Massachusetts, Vermont and the capital region of New York, to ensure that they met company standards, to improve the services there, help develop new business in the area,

2

supervise the four (4) district mangers that worked in the region, and basically work for Mr. Orlandi as his representative in that area. (¶'s Dep. Vol. I pp. 76-77, L.15-22).

9.    In December 1996, Mr. Orlandi prepared his own evaluation of the plaintiff and rated Mr. Hayes as "Commendable." (¶'s Dep. Vol I, Pp.94, L. 1-9; COM 0148-0150).   At the time Mr. Hayes was evaluated by Mr. Orlandi in December 1996, he had been the Regional Manager for six (6) months. (COM 0148-0150).

10.    In the plaintiff's performance appraisal, Mr. Orlandi specifically represented that: "Tim does a good job in getting new business, very active and relates well with the clients . . . He is a true asset to our company." (COM 0148).   Additionally, Mr. Orlandi comments that "Tim brings strong leadership, new business and a great deal of good organizational skills to this area." (COM 0149).   Under the section entitled "individual strengths" Defendant Orlandi listed "Organization, P & L Skills, leadership and financial performance. Account retention. A quick thinker and a team player." (COM-0150)   Under the section entitled "Identify major areas requiring performance improvement" Defendant Orlandi stated: "None". (COM 0150).

11.    Mr. Orlandi would constantly use Mr. Hayes's territory as an example to other Compass Group employees as how a Region should be run. (¶'s Dep. Vol. I, Pp. 23, L. 3-9).   Mr. Orlandi would on a regular basis compliment Mr. Hayes' job performance (¶'s Dep. Vol. I, Pp. 25, L. 5-10)

12.    In the Spring of 1997 plaintiff was informed of a Sales Position opening in the Northeast within Compass Group. (Hayes' Aff'd ¶26).   Mr. Hayes viewed this as an opportunity to advance his career with Compass Group. (Hayes' Aff'd ¶27).

13.    Plaintiff interviewed for the sales position. (Hayes' Aff'd ¶27).   Following Mr. Hayes' interview, Mr. Orlandi came to the plaintiff's Middletown, Connecticut office and informed the plaintiff that he was being considered for the sales position. (Hayes' Aff'd ¶28).   At that time

3

Defendant Orlandi begged the plaintiff <u>not</u> to take the sales position and remain his Regional Manager. (Hayes' Aff'd ¶28). Mr. Orlandi specifically informed the plaintiff that, "he could not run the Northeast Region without [the plaintiff]." (Hayes' Aff'd ¶28). As a result, the plaintiff withdrew his name for consideration for the Sales Position. (Hayes' Aff'd ¶29).

14.    Based upon Defendant Orlandi's glowing compliments to the plaintiff and his assurance that he had a secure position in the Northeast Region, plaintiff took a fifty thousand-dollar ($50,000.00) loan out against of his 401k and purchased a new home. (Hayes' Aff'd ¶31).

15.    A short time later the Sales Position became vacant again, and Mr. Orlandi again came to plaintiff's Middletown office and asked him not to consider reapplying for this position. (Hayes' Aff'd ¶30). Based upon Mr. Orlandi's glowing compliments to the plaintiff and his assurance that Mr. Hayes had a secure position, did not reapply for the Sales Position. (Hayes' Aff'd ¶31).

*Defendants' Discriminatory Practices.*

16.    In mid-August 1997, for the very first time, Orlandi begins to complain about Mr. Hayes' job performance. (COM 0342-0343).

17.    During the approximate same period of time that Mr. Orlandi is suddenly taking issue with Hayes' performance, other long term, older employees begin to see their employment with Compass Group threatened by Mr. Orlandi and ultimately terminated.

18.    On June 12, 1998, Mr. Wayne Patick (age 47) is informed that his position at Compass Group is being eliminated as a result of a one (1) man company restructure (SL 4531-4536 and SL 4553-4555).

19.    On September 25, 1998, Mr. Joseph Wawryzinski (age 59) is terminated as a result of a one (1) person company reorganization (SL 4444 and SL 4458).

20.    On March 26, 1999, Mr. Phil Canning (age 50) finds himself unemployed as a

4

result of a one-(1) person corporate restructure (D Confidential 00552 - 00559).

    21.    In September 1997, Mr. Brian Jendrzejczyk (age 43) is terminated for job performance reasons (Hayes' Aff'd ¶18).

    22.    On March 20, 1998, Mr. Mark Katona (age 50) is terminated for alleged job performance deficiencies (SL 5114 and 5117).

    23.    On April 18, 1997, Mr. Saverino Correale's (age 43) position is eliminated (SL 4827 and SL 4788).

    24.    In 2001, Mr. Mark Hannon's (age 52) position is eliminated while the other District Manager in his territory, Mr. Bill Pellien (thirties) remains employed (Orlandi Dep. Vol. I, pp. 68, L. 7-11; 15-17).

    25.    On November 1, 1997, Mr. Todd Brommage (age 50) is terminated for alleged job performance reasons (D Confidential 00565-00569).

    26.    Although not documented for purposes of this opposition to Motion for Summary Judgement, the Plaintiff plans on presenting other examples in addition to the above.

*Stray Comments*

    27.    Mr. Orlandi made his views of older employees employed by Compass Group well known.  Mr. Orlandi referred to the older managers of the Compass Group work force as "old school managers" (¶'s Dep. Vol I, Pp. 27, Ll. 11-12).

    28.    Mr. Katona's direct supervisor, Mr. John Valentin, commented that Mr. Mark Katona "needs to move into the late 90's"(SL 5150).

    29.    In a performance appraisal prepared by Mr. Orlandi in November 1998, Mr. Orlandi characterized Mr. Phil Canning as "very slow to change" . . he has a very difficult time with change" (SL4315 - SL 4321).

    30.    Mr. Orlandi in speaking of Mr. Wawyzinski, would often refer to him as the "old

style of coaching in Buffalo" and compared him to the former Buffalo Bills coach, Mark Levy. (Hayes' Aff'd ¶22).

31.    Mr. Orlandi would often refer to the new Eurest style of doing business as a "change in culture."(Hayes' Aff'd ¶23)

32.    Mr. Orlandi made it known to plaintiff that it wasn't enough that your performance was good, you had to meet a certain criteria of Mr. Orlandi's i.e. well educated, physically fit, and good looking (Hayes' Aff'd ¶23). Plaintiff understood this to mean that in order to succeed at Eurest and its "change in culture" one had to be  "young, fast, and aggressive."(Hayes' Aff'd ¶23). In fact as early as 1994, Mr. Orlandi had set goals for himself to: "Reposition [him]self with a *stronger* staff; *stay active* in *physical fitness* and nutrition, rebuild *strong* managers …"(SL 4174).

*Unlawful Termination.*

33.    Mr. Steven Gaber is the Human Resource Director for Compass Group. (Gaber Dep. Pp. 17, L.8-15). Mr. Orlandi requested that Mr. Gaber review some "information" regarding Mr. Orlandi's decision to terminate the plaintiff. (Gaber Dep. Pp. 69, L1-22). Mr. Orlandi sent some documents to Mr. Gaber for his review regarding terminating plaintiff for job performance reasons. (Gaber Dep. Vol I, Pp70, L1-24 and Pp. 71 L1-24). Mr. Orlandi neglected to forward to Mr. Gaber two (2) favorable reviews Mr. Orlandi had given Mr. Hayes. (Gaber Dep. 76, L. 5-22).

34.    On June 1, 1998, Mr. Hayes' employment is terminated by Mr. Orlandi (undisputed). At the time defendants discharged the plaintiff, Mr. Hayes was forty-seven (47) years old. (undisputed).

35.    Mr. Orlandi had a plan in place to terminate plaintiff many months prior to Mr. Hayes' actual discharge. (¶'s Dep. Vol. I, pp.12, L.9-11 and pp. 13, L. 2-17,: SL 4323)

36.    On October 24, 1997, Mr. Orlandi had delegated as "First Priority" the

interviewing and identifying of two (2) Senior District Managers -one for the Buffalo, New York area, and one for the Hartford, Connecticut area. (SL 4323).

37.     In fact, on May 2, 1998, approximately one (1) month before terminating Mr. Hayes, Mr. Orlandi identifies and hires plaintiff's replacement, Ms. Catherine Cape ("Ms. Cape") (D Confidential 00618 and 00635). Ms. Cape was born on November 25, 1957. (D Confidential 00624). Ms. Cape had far less experience and was less qualified than the plaintiff, Mr. Hayes. (D Confidential 00630-00632). Despite being less qualified and having less experience, Ms. Cape was hired by Defendant Orlandi to replace the plaintiff. (Orlandi Dep. Vol II, Pp139, L. 20-25)

*Reasons Given for Hayes' Termination are False and Unworthy of any Credence.*

38.  The Defendants' claim that Mr. Hayes was terminated as a result of poor performance is fabricated, exaggerated or based on something for which the Plaintiff cannot be blamed. These "lack of performance" claims are identified in paragraphs 5 through 14 of the Defendant's Local Rule 56(a) Statement and refuted in paragraphs 5 through 14 of the Plaintiff's Local Rule 56(a)2 Statement and paragraphs 42 through 46 of Mr. Hayes affidavit paragraph 42-12.

39.  Although Mr. Orlandi provided Mr. Hayes with a "counseling report" on May 4, 1998, Mr. Orlandi terminated Mr. Hayes 26 days later without determining whether the "problems" had been addressed and before giving Mr. Hayes the opportunity to address the issues raised (Plaintiff's Local Rule 56(a)2 Statement,  paragraph 12; Hayes affidavit)

*Pattern and Practice of Discriminatory Rancor Towards Defendants' Older Work Force*

40.     In addition to the plaintiff, no less than ten (10) other Compass Group employees, over the age of forty-(40) have found their employment terminated by the Defendants for a variety of suspect reasons.

41.     In 1997, Mr. Phil Canning ("Canning") was promoted to Regional District Manager in the Northeast Region. (D Confidential 00553). In a performance evaluation of Mr.

7

Canning dated November 24, 1998, Mr. Orlandi described Mr. Canning as "very slow to change... Becoming a Compass Employee, has been extremely slow...He has had a very difficult time with change." (SL 4319). Less than two (2) weeks later, on December 10, 1998, Mr. Orlandi completed his appraisal of Mr. Canning's job performance and this time specifically commented that he has "seen a lot of improvement over the last three months..." (SL 4370- SL 4374).

42.    On March 8, 1999, Mr. Canning is again reviewed by Mr. Orlandi (SL 4375- SL 4379) and specifically states that "he has seen an improvement in most areas" of Mr. Canning's work performance (SL 4379). During same time period, Mr. Orlandi specifically complemented Phil Canning on his job performance, on his ability to operate, on the condition of the jobs that Phil was operating. (¶'s Dep. Vol. I, pp. 38, L.21-23).

43.    On March 26, 1999, three (3) weeks after a favorable performance evaluation and with no prior warning, Mr. Canning's employment at Compass Group is summarily terminated. (SL 4401; D Confidential 00555). Mr. Orlandi informed Mr. Canning that he was being terminated as part of a corporate reorganization, however, he was the only employee terminated in the reorganization. (D Confidential 00554).

44.    Mr. Canning was fifty (50) years old at the time of his termination. (D Confidential 00554). Mr. Orlandi authored and carried out the plan of reorganization that eliminated one (1) position, Mr. Canning's. (Orlandi Dep. 1/12/01 Pp. 22, L1-17). Mr. Orlandi was the terminating supervisor for Mr. Canning. (¶'s Dep. Vol. I, Pp.39, L. 21-24).

45.    Within Compass Group there exists a policy that seniority is a factor in determining which employee(s) is/are going to be terminated when a reorganization occurs. (Mr. James Nichols Dep. pp 61).

46.    Despite the fact that there were other younger employees with fewer qualifications and less experience, Mr. Orlandi ignored that policy and targeted Mr. Canning's position for

8

elimination. (D Confidential 00554).

47.     On September 2, 1999, Mr. Canning filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination charging Compass Group and Mr. Orlandi with unlawful termination based on his age. (D Confidential 00552-00559). On or about July 31, 2000 Mr. Canning filed a Complaint with the Commonwealth of Massachusetts, Superior Court Division alleging discrimination on the basis of age in violation of Massachusetts General Statute 151b. (D Confidential 00552-00559; Orlandi Dep. Vol I Pp. 132).

48.     Mr. Wayne Patick ("Mr. Patick") was born on March 13, 1951. (D Confidential 00534-00545).

49.     Mr. Patick commenced employment with the defendant on November 11, 1974. (SL 4553).

50.     Mr. Patick's employment with Compass Group was terminated on or about June 12, 1998. (SL 4531). Compass Group's reason for terminating Mr. Patick, as with Mr. Canning, was job elimination as a result of an alleged restructuring. (SL 4555).

51.     Two (2) younger District Managers were retained, while Mr. Patick's position was chosen for elimination. (D Confidential 00536).

52.     One day after Mr. Patick's job was allegedly eliminated, Compass Group advertised a new District Manager position in substantially the same region. (D Confidential 00536). The position was subsequently filled by a younger less qualified individual. (D Confidential 00541).

53.     Mr. Patick brought an age discrimination case against Compass Group with the Equal Employment Opportunity Commission and the Massachusetts Commission Against Discrimination (Gaber Dep. Pp. 7, L.20-23; D Confidential 00534 - 00536). Mr. Patick filed a complaint with the Federal District Court, District of Massachusetts (D Confidential 00538-

9

00545).

54.     Mr. Joseph Wawryzinski ("Mr. Wawryzinski") was born on March 18, 1939.
(SL 4458).

55.     On January 19, 1987, Mr. Wawryzinski commenced employment with Compass
Group d/b/a Canteen Corporation. (SL 4458)

56.     Mr. Wawryzinski's employment was terminated on September 25, 1998.  (SL
4444). Mr. Orlandi was the terminating supervisor for Mr. Wawryzinski. (¶'s Dep. Vol. I, Pp.40,
L. 2-3).

57.     Mr. Wawryzinski's termination was part of another one (1) person reorganization
by Mr. Orlandi. (Orlandi Dep. 1/12/01 Pp. 11, L.21-24 and Pp. 12, L. 1-4).  Mr. Waryzyski was
the only person terminated as a result of the reorganization. (Orlandi Dep. 1/12/01 Pp. 11, L.21-24
and Pp. 12, L. 1-4).   Mr. Wawryzinski was fifty-nine (59) years old when he was terminated by
Mr. Orlandi (SL 4458).

58.     On June 12, 1978, Mr. Mark Katona ("Mr. Katona") commenced his employment
with defendant (SL 5117).  Mr. Katona's date of birth was December 9, 1948.  (SL 5117)

59.     Just fifteen (15) months prior to his termination, on January 14, 1997, Mr. Katona
is congratulated by his Regional Vice President, Mr. John Valentine and given an increase in salary
based upon his performance evaluation rating of "Competent." (SL 5148).

60.     Approximately six (6) months after receiving an evaluation rating of "Competent,"
Mr. Katona is placed on a performance plan (SL 5149-5151).

61.     Mr. Valentine, in describing Mr. Katona's work performance, specifically notes
that Mr. Katona "needs to move into the late 90's." (SL 5150).

62.     Mr. Katona's employment was terminated by the defendant on March 20, 1998.
(SL 5117)

63.    At the time he was terminated, Mr. Katona was fifty (50) years old. (SL 5117).

Three (3) months prior to his termination, in December 1997, via a letter, Mr. Katona documented

to the defendant that he was being "targeted as a liability being a long term Canteen employee who

has fixed ideas and can't change." (SL 5167-5171).

64.    On December 16, 1997, while on an alleged performance plan, Mr. Katona is

congratulated and given his 1997 Field Incentive Bonus Check for his work and dedication in 1997

(SL 5172).  However, on March 20, 1998, approximately three (3) months after being

congratulated for his efforts, Mr. Katona's employment is terminated on the basis of

"unsatisfactory performance." (SL 5114).

65.    Mr. Orlandi referred to Mr. Katona as "an old school manager." (¶'s Dep. Vol. I,

Pp. 27, L. 11-15).  Because Mr. Katona was an "old school manager" Mr. Orlandi did not want

him working in his region. (¶'s Dep. Vol. I, Pp. 27, L. 11-15).

66.    On April 4, 1998, Mr. Katona filed a Charge of Discrimination with the Equal

Employment Opportunity Commission against Compass Group based upon age. (D Confidential

00586-00592).  Mr. Katona filed a complaint in the United States District Court, Southern District

of New York against Compass Group alleging, *inter alia*, that Compass Group discriminated

against him on the basis of his age in violation of ADEA. (D Confidential 00586-00592).

67.    Mr. Brian Jendrzejczyk ("Mr. Jendrzejczyk") commenced employment with

Compass Group on September 14, 1973. (SL 4762).  Mr. Jendrzejczyk's date of birth is

September 6, 1954. (SL 4762).

68.    The plaintiff knew Mr. Jendrzejczyk for almost twenty-five (25) years. (Hayes'

Aff'd ¶10).  Mr. Jendrzejczyk was a District Manager for Compass Group for the Connecticut

area. (Hayes' Aff'd ¶11).  When Mr. Hayes became Regional Manager in 1996, Mr. Jendrezjczyk

began to report directly to him. (Hayes' Aff'd ¶12).

11

69.     Mr. Jendrezjczyk did have problems performing his job as District Manager, however plaintiff still viewed him as an asset to Compass Group. (Hayes' Aff'd ¶13).  Mr. Jendrezjczyk was excellent when he was in charge of one (1) client. (Hayes' Aff'd ¶14).  It was only when he was promoted to District Manager and was given responsibility for a number of clients that he had some difficulty. (Hayes' Aff'd ¶14)  Knowing this, plaintiff had advocated giving him the lesser position of General Manager at Electric Boat. (Hayes' Aff'd ¶14)  Plaintiff proposed to Mr. Keith Cullinan ("Mr. Cullinan"), Area Vice President at Compass Group, that Compass Group demote Mr. Jendrezjczyk to the General Manager position at Electric Boat. (Hayes' Aff'd ¶15).  Mr. Cullinan informed plaintiff that that position was reserved for "employees who had an opportunity to develop their career." (Hayes' Aff'd ¶15).

70.     Mr. Orlandi instructed plaintiff to develop a plan to terminate Mr. Jendrezjczyk. (Hayes' Aff'd ¶16).  When plaintiff voiced his opinion that Mr. Jendrezjczyk was still a valuable employee at Compass Group who could contribute in another position, Mr. Orlandi threatened plaintiff's job security at Compass Group.(Hayes' Aff'd ¶17).  As a result of Mr. Orlandi's threat, plaintiff followed through and developed a paper trail and terminated Mr. Jendrezjczyk. (Hayes' Aff'd ¶18)

71.     Had Mr. Jendrezjczyk been younger, Compass Group would have given him the opportunity to develop his career. (Hayes' Aff'd ¶19)  Because of Mr. Jendrezjczyk's age he was terminated from Compass Group. (Hayes' Aff'd ¶19)  In September 1997, Mr. Jendrzejczyk was terminated for job performance reasons (SL 4784-4786).  At the time of termination, Mr. Jendrezejczyk was forty three (43) years of age. (SL 4762).

72.     Mr. Saverino Correale ("Mr. Correale") was hired by Compass Group on March 5, 1990.  (SL 4788).

73.     Mr. Correale's date of birth is March 6, 1954.  (SL 4788).

12

74.    Effective April 18, 1997, Mr. Correale's job position as District Manager was eliminated. (SL 4827). At the time Mr. Correale's job position at Eurest Dining Services was eliminated, Mr. Correale was forty-three (43) years of age. (SL 4788 and SL 4827).

75.    Mr. Mark Hannon (""Mr. Hannon") was a District Manager for Compass Group. (Orlandi Dep. Vol. I, pp. 67, L24-25). Mr. Hannon's position was allegedly eliminated in 2001. (Orlandi Dep. Vol. I, pp. 68, L.9-11). Mr. Hannon was approximately fifty-two (52) years old when his position was eliminated. (Orlandi Dep. Vol. I, pp. 68, L. 15-17).

76.    Mr. Hannon had been with Compass Group for twenty seven (27) years. (Orlandi Dep. Vol. I, pp. 70, L. 20-24).

77.    There were two (2) District Managers in Buffalo, one (1)position was held by Mr. Hannon and the other was held by Mr. William Pellien ("Mr. Pellien")(Orlandi Dep. Vol. I, pp. 68, L. 7-11). Mr Pellien, who was hired by Mr. Hannon, is in his mid thirties (30s). (Orlandi Dep. Vol. I, pp. 67, L. 12-19).

78.    Upon Mr. Wawryzinski's one (1) person reorganization/elimination, Mr. Hannon assumed the majority of Mr. Wawryzinski's job functions (Hannon Aff'd ¶11). Thereafter, great pressure and stress was applied upon Mr. Hannon (Hannon Aff'd ¶12 and 13) Mr. Orlandi and Compass Group's conduct contributed to the stress that ultimately caused Mr. Hannon's heart attack (Hannon Aff'd ¶13). Upon returning from his medical leave, Mr. Orlandi met with Mr. Hannon and asked for Mr. Hannon's resignation (Hannon Aff'd ¶14). However, the next day Mr. Orlandi called to say he changed his mind and wanted Mr. Hannon to stay (Hannon Aff'd ¶15). Mr. Hannon agreed to return to work (Hannon Aff'd ¶16).

79.    Mr. Orlandi started to make things very difficult for Mr. Hannon (Hannon Aff'd ¶16). Moreover, after assuming Mr. Wawryzinski's job, Mr. Orlandi began to make false accusations about Mr. Hannon's job performance and began to wrongfully chastise him for events

13

or occurrences that were neither his fault or were out of his control (Hannon Aff'd ¶16).

Additionally, Mr. Orlandi would prevent Mr. Hannon from performing his job (Hannon Aff'd ¶16).

     80.    Mr. Orlandi's conduct was so spiteful that Mr. Hannon's health began to suffer

again to such an extent that he was compelled to resign (Hannon Aff'd ¶17). Given the manner in

which Mr. Orlandi treated Mr. Hannon, it would be inaccurate to state that Mr. Hannon

voluntarily left his position at Compass Group (Hannon Aff'd ¶19). Moreover, Mr. Hannon knew

that if he did not leave, his health would have again failed or he would have been terminated for

false reasons (Hannon Aff'd ¶19).

     81.    Mr. Hannon's position and responsibilities were assumed by Mr. William Pellien.

On information and belief he was approximately twenty (20) years younger then Mr. Hannon and

had only been with the company for about seven (7) years (Hannon Aff'd ¶20).

     82.    Mr. Orlandi testified that Mr. Hannon's position was eliminated. Even assuming that

is true, Compass Group ignored seniority rules, when it eliminated Mr. Hannon's position and

retained Mr. Pellien despite the fact Mr. Pellien was younger and had only been with Compass

Group for approximately one (1) year. (Orlandi Dep. Vol I, P69, L. 22-24).

     83.    Mr. George Yundt ("Mr. Yundt") was born on July 10, 1953 (SL 4832). On

October 31, 1977, Mr. Yundt commenced employment with Compass Group d/b/a Canteen

Corporation (SL 4832).

     84.    Mr. Yundt's employment was terminated in December 1998. (Hayes' Aff'd ¶24).

     85.    Mr. Yundt believed he was terminated by Compass Group because of his age. (¶'s

Dep. Pp. 32, L. 23-25 and Pp. 33, L1-18; Hayes' Aff'd (¶25).

     86.    Mr. Swenson was born on August 12, 1939 (Swenson Aff'd ¶3).

     87.    Mr. Swenson was a Regional Vice President for Compass Group. (Swenson Aff'd

¶7). At the time Mr. Swenson was terminated the area he was responsible for was one of the top

ten (10) producing areas in the country. (Swenson Aff'd ¶8).

88.     In or about 1995, Mr. Swenson's position at Compass Group was terminated for alleged job performance issues. (Swenson Aff'd ¶9).

89.     At the time of termination, Mr. Swenson was fifty-five (55), years of age. (Swenson Aff'd ¶10).

90.     Mr. Thomas Brommage ("Mr. Brommage") was born on May 3, 1947. (.D Confidential 00565).

91.     He was hired by DAKA in August of 1991 as a General Manager of Health Care. (D Confidential 00565).  DAKA is a subsidiary of Compass Group USA (Com 0493).

92.     Despite previous successful evaluations, Mr. Brommage's employment was terminated on November 1, 1997 (D Confidential 00566).

93.     On or about October 30, 2000, Mr. Brommage, through his legal counsel filed an action in the Commonwealth of Massachusetts, Superior Court Division, alleging discrimination on the basis of age.  (D Confidential 00565-00569).

94.     During the same time period that the defendants were systematically terminating its/their older employees, younger employees were being hired and retained by the defendants.  Mr. Jon Kenyon ("Mr. Kenyon"), who was born on June 18, 1963, has "moved up very quickly" (SL 4011).

95.     In eliminating a district manager position in Buffalo, Compass Group chose to retain Mr. Pellien (mid thirties) and eliminate Mr. Hannon (age 52). (Orlandi Dep. Vol I, P69, L. 22-24).

96.     In March 26, 1999, when Mr. Orlandi informed Mr. Canning that his position was being eliminated due to a corporate restructure, Orlandi retained two (2) Regional Managers, Mr. Edward Baia and Mr. John Edick (D. Confidential 00554).  Both Mr. Baia and Mr. Edick were

15

younger than Mr. Canning, had less experience, and were not producing as much revenue for the

company. (D. Confidential 00554). Mr. Baia was thirty-nine (39) years of age at the time (D

Confidential 00947 and 00956-7).

    *Disparate Treatment Per Se.*

    97.    Defendant's philosophy, as stated by Defendant Orlandi, is that demotions do not

work, because a person becomes disgruntled, sits amongst their peers, are embarrassed, and it's

not a good situation. (Orlandi Dep. Vol II. Pp 280, L. 7-25 and pp. 281, L 1-2).

    98.    Mr. Orlandi refused to consider demotion for Mr. Hayes. Mr. Orlandi refused to

demote Mr. Jendryczyk.

    99.    Ms. Ann Lavergne ("Ms. Lavergne"), a former Compass Group employee, was

demoted from her District Manager position to a General Manager position. (Lavergne

Declaration).    At the time of the demotion, Ms. Lavergne was thirty-nine (39) years of age.

(Lavergne Declaration). On information and belief, Mr. Paul D'Amico a former Compass Group

employee was demoted from his District Manager position. (Hayes' Aff'd ¶40).    At the time of

demotion, Mr. D'Amico was in his mid-thirties (30's). (Hayes' Aff'd ¶41).

    *Other Age Discrimination Cases.*

    100.    There are other age discrimination cases that defendants failed to disclose to the

plaintiff, despite interrogatory requests therefore.    Ms. Geraldine Kuczmarski had filed a

Complaint of Discrimination with the Commission on Human Rights and Opportunities alleging,

*inter alia*, age discrimination on November 17, 1997 (0014-0022). Mr. Robert Fleming filed a

charge of discrimination on the basis of age on October 21, 1998 with the Massachusetts

Commission Against Discrimination (0024).

    *Defamation*

    101.    In or about 1996, Ms. Wedekind was promoted to Regional Vice President of the

Mid-Atlantic Region.(Hayes Aff'd ¶33)    Prior to her promotion in 1996, Ms. Wedekind was plaintiff's direct supervisor. .(Hayes Aff'd ¶32)    Plaintiff and Ms. Wedekind, developed an excellent working relationship.(Hayes Aff'd ¶34).

102.    Upon plaintiff being notified of his employment termination as Regional Manager, Mr. Hayes immediately contacted Ms. Wedekind to assist him in either getting him reinstated in his former position or helping him find another position within Compass Group.(Hayes Aff'd ¶35). Ms. Wedekind told plaintiff that she would see what she could do about either getting plaintiff's old job back and/or securing a position for plaintiff within Compass Group.(Hayes Aff'd ¶36). Approximately two (2) days later Ms. Wedekind informed Mr. Hayes that, "Mr. Cary Orlandi had poisoned the well and that there was nothing she could do for [him]."(Hayes Aff'd ¶ 37).    Plaintiff took that to mean that Mr. Orlandi had published false information about him and his job performance throughout Compass Group to such an extent that plaintiff could no longer be viewed as an asset to the company and therefore would not be allowed to return to work at Compass Group in any capacity.(Hayes Aff'd ¶38).

*Severance.*

103.    Upon termination, plaintiff was offered five (5) weeks of severance pay. (COM-0365-0369).

104.    Under Compass Group's severance policy, plaintiff was entitled to thirty-four (34) weeks of severance pay. (0025-0028).

*Emotional Distress.*

105.    The trauma and emotional distress that plaintiff had to endure was devastating to his self esteem and confidence and it literally effected every aspect of his life. (Hayes' Aff'd ¶47). Moreover, because of the defendants, Mr. Hayes' confidence as an employee in the food service business was ruined. (Hayes' Aff'd ¶47).    The fear of having to literally start his career all over at

the age of forty seven (47) with no job prospects was horrifying to the plaintiff and his family. (Hayes' Aff'd ¶48).

106.    The plaintiff was so ashamed and embarrassed that he was afraid to leave his house out of fear that he may accidentally run into a former client or former colleague of Compass Group. (Hayes' Aff'd ¶49).  Plaintiff remains afraid of going to places or events where there is a large crowd for fear that he may accidentally run into a former client or former colleague of Compass Group. (Hayes' Aff'd ¶50).

107.    At the time of termination, plaintiff's family had just recently purchased a new home. (Hayes' Aff'd ¶51).  With no income, Mr. Hayes was certain that he would not be able to make the payments and consequently would lose his family's home (Hayes' Aff'd ¶51).

108.    The plaintiff was reluctant to get his mail, for fear that there would be bills that he knew he could not pay. (Hayes' Aff'd ¶52).  The financial uncertainty and the embarrassment that the defendants caused the plaintiff was immense. (Hayes' Aff'd ¶53).  Mr. Hayes experienced nauseous, with stomach cramps, vomiting, and extreme nervousness as a result of the defendants' unlawful actions. (Hayes' Aff'd ¶53).  Plaintiff's family life was also negatively effected by the defendants' actions. (Hayes' Aff'd ¶54).

109.    Plaintiff was embarrassed and distressed about the fact that he could not provide for his family. (Hayes' Aff'd ¶55)   After the deceptive behavior and blatant lies by Compass Group and Mr. Orlandi, plaintiff is still to the point that he can still not trust anybody. (Hayes' Aff'd ¶56).

## ARGUMENT

*Summary Judgment Standard*

Summary judgment is only warranted upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. The burden is on the moving party to establish the absence of any material factual issues. *Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)*. In determining whether there are genuine issues of material fact, we are "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir. 1997)*. We may only affirm if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 685 (2d Cir. 2001)* (internal formatting omitted)(per curiam).

In discrimination cases where state of mind is at issue, we affirm a grant of summary judgment in favor of an employer sparingly because "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." *Graham v. Long Island R.R., 230 F.3d 34 at 38*.

In prior cases, we have also emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue. *See, e.g., See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994); Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989)*. Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant depositions, affidavits and materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination. *See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37*

19

*(2d Cir. 1994).* [A] grant of summary judgment is proper only if the evidence of discriminatory intent is so slight that no rational jury could find in the plaintiff's favor." *Woroski v. Nashua Corp., 31 F.3d 105 at 108-9 (2d Cir. 1994)(citation omitted).*

I.      **Summary Judgment is Inappropriate for Plaintiff's Age Discrimination Claim.**

"The ultimate issue in an ADEA case is whether the plaintiff has proved by a preponderance of the evidence that "[his] age played a motivating role in, or contributed to, the employer's decision." *Renz v. Grey Advert., Inc., 135 F.3d 217, 222 (2d Cir. 1997).* Because direct evidence of discrimination - a "'smoking gun' . . . attesting to a discriminatory intent," *Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991)* is typically unavailable, plaintiffs and courts ordinarily proceed by way of the three-part burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).* Like most Circuits, this Court utilizes the burden-shifting analysis that was first promulgated in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).* "We analyze ADEA discrimination (and retaliation) claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Jetter v. Knothe Corp., 324 F.3d 73 at 76 (2nd Cir. 2003).* " A plaintiff must first present a prima facie case of discrimination." *McDonnell Douglas, 411 U.S. at 802.* "If the plaintiff does this, discriminatory animus is presumed and the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the employment decision." *Id. at 802-03.* "If the defendant does so, the plaintiff must show that the articulated non-discriminatory reason for defendant's action is in fact a pretext for discrimination." *Jetter, 324 F.3d at 75-6.*

*a.*      Plaintiff has set forth a prima facie case of age discrimination.

The defendants argue that the Plaintiff has failed to make out a prima facie case of discrimination on the basis that the defendants have allegedly offered a legitimate non-

20

discriminatory reason for the plaintiff's termination, i.e. poor job performance and it has further

claimed that the plaintiff has failed to offer any evidence that this is pre-text. The defendants'

argument clearly evidences a fundamental misunderstanding of the standard for establishing a

prima facie case of discrimination.

To establish a prima facie case of age discrimination under the Age Discrimination in

Employment Act, a claimant must demonstrate that: 1) he was within the protected age group; 2)

he was qualified for the position he held; 3) he was subject to an adverse employment action; and

4) the adverse action occurred under "circumstances giving rise to a inference of discrimination."

See *Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001).*

In the case at bar Mr. Hayes has presented sufficient evidence to make out a prima facie

case of discrimination. First, he was a member of a protected group within the meaning of the

ADEA as at all relevant times hereto he was over the age of forty-(40). Moreover, at the time he

was wrongfully terminated by Mr. Orlandi and Compass Group Mr. Hayes was forty-seven (47)

years of age.

Secondly, the fact that Mr. Orlandi and plaintiff's direct supervisor, Ms. Wedekind agreed

that Mr. Hayes' was promotable, and the fact that he was promoted to Regional Manager for the

Northeast Region certainly underscores the fact that Mr. Hayes was qualified for the position he

held. "As we have repeatedly held, the qualification necessary to shift the burden to defendant for

an explanation of the adverse job action is minimal; plaintiff must show only that he possesses the

basic skills necessary for performance of [the] job." *Owens v. New York City Housing Auth., 934

F.2d 405, 409 (2d Cir. 1991).* Thus, Mr. Hayes has sufficiently set forth evidence that supports

his contention that he was qualified for the position of Regional Manager.

The third element that the plaintiff must demonstrate is that he suffered an adverse

employment action. An "adverse employment action" is one, which is "more disruptive than a mere

inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202

*F.3d 636, 640 (2d Cir. 2000)* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d*

*132, 136 (7th Cir. 1993))*. Examples of materially adverse changes include "termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices . . .

unique to a particular situation." Id. (quoting *Crady*, 993 F.2d at 136).   As the defendant readily

admits, Mr. Hayes' employment was terminated on June 1, 1998 for allegedly unsatisfactory

performance. Thus, Mr. Hayes has demonstrated that he suffered an adverse employment action at

the hands of Mr. Orlandi and Compass Group.

  Finally, Mr. Hayes has shown that the adverse employment action occurred under

"circumstances giving rise to an inference of discrimination.  It is undisputed that Mr. Hayes had

over twenty four (24) years of experience, has had numerous merit increases, and a history of

positive performance evaluations on a wide range of job elements and positions.  To now be called

an undesirable employee with performance issues is not only disingenuous, it runs contrary to the

accomplishments and track record that Mr. Hayes had developed over the almost two and one-half

(2½) decades at Compass Group. By comparison, the individual selected to replace Mr. Hayes was

younger, had less experience and was less qualified than the plaintiff. The plaintiff's replacement

was a newly hired employee with little experience in the food service industry. "Indeed, we have

previously held that a plaintiff has demonstrated an inference of age discrimination and thus

established a *prima facie* case in nearly identical circumstances where the majority of plaintiff's

responsibilities were transferred to a younger co-worker, and shortly thereafter some of plaintiff's

other duties were transferred to a newly hired younger employee. *See Montana*, 869 F.2d at 105

(inference established where plaintiff's duties assumed by co-worker and newly hired employee

who were both approximately (thirty) 30 years younger); *see also Stratton*, 132 F.3d at 879-80

(fact that plaintiff's duties were taken over by individuals 13 and 26 years younger supports inference of discrimination); *Viola v. Philips Medical Sys. of N. Am., 42 F.3d 712, 716-17 (2d Cir. 1994)* (sufficient inference of discrimination for *prima facie* case where plaintiff's position filled by newly hired younger employee within one year of his termination).

Additionally, in December 1996, Mr. Orlandi prepared an evaluation of the plaintiff and rated Mr. Hayes as "Commendable." At the time Mr. Hayes was evaluated by Mr. Orlandi plaintiff had been the Regional Manager for over six (6) months.

In sum, Mr. Hayes has met this minimal burden under the *McDonnell-Douglas* paradigm. First, plaintiff was over forty-seven (47) years of age when he was fired, and thus fell within the protected age group. *See 29 U.S.C. § 631(a).* Second, plaintiff's extensive experience in the food service industry and his steady advancement up the corporate ladder at Compass Group along with his twenty-four (24) continuous years of dedicated service evidence that he was qualified for the position he held. Third, plaintiff was summarily discharged in June 1998 for alleged job performance reasons. Finally, Mr. Hayes' employment termination occurred under circumstances giving rise to a inference of discrimination in light of the most recent performance appraisal prepared by Mr. Orlandi describes the plaintiff's job performance as "Commendable" and the fact that he was replaced by a younger less qualified individual. *See, e.g., Tarshis v. Riese Org., 211 F.3d 30, 38 (2d Cir. 2000).* Thus, plaintiff has put forth the minimal proof necessary to establish a prima facie case of age discrimination. "The burden of establishing a prima facie case under *McDonnell Douglas* is minimal." *Howley v. Town of Stratford, 217 F.3d 141 at 150.*

Having met his initial threshold, the burden now shifts to the defendants to articulate a legitimate-non discriminatory reason for the adverse employment decision. "Once a plaintiff has established a prima facie case, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions. See *McDonnell-Douglas Corp. v. Green,*

*411 U.S. 792, 802 (1973)* (Title VII); *Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000)* (ADEA).

*b.*    <u>Burden shifts to the Defendant</u>.

In the instant action, defendants have maintained that Mr. Hayes' employment was terminated based upon performance reasons. Thus, once the defendant has made a showing of a neutral reason for the complained of action, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir. 1997)*.

*c.*    <u>Reason proffered by the defendants is untrue and only a pretext for discriminatory animus.</u>

"Once the employer produces admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus, the presumption raised by the prima facie case falls away and the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were not its true reasons but were merely a pretext for discrimination." (internal quotes omitted*) Graefenhain v. Pabst Brewing Company 827 F.2d 13 (7th Cir. 1987)*. Thus, once the defendant has made a showing of a neutral reason for the complained of action, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern, 131 F.3d at 312*. To defeat summary judgment within the *McDonnell Douglas* framework, moreover, "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating'

24

factors." *Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995)*; see also *Reeve v. Sanderson Plumbing Products, Inc.,530 U.S.133 at 147; Bickerstaff v. Vassar College, 196 F.3d 435, 447 (2d Cir. 1999), cert. denied, 530 U.S. 1242.*

Mr. Hayes is prepared to proffer at trial sufficient evidence to prove the alleged non-discriminatory reason, poor performance, is untrue and exaggerated. Moreover, Mr. Hayes will be able to show that for twenty four-(24) years he excelled with defendant Compass Group and moved up the ranks to Regional Manager for the Northeast Region. Additionally, the plaintiff will demonstrate that he along with no less than ten (10) other Compass Group employees in the protected class were callously cast away after years of dedicated service and loyalty to the defendant company. Additionally, there exists circumstantial evidence in the form of derogatory comments directed at the older employees which demonstrates that the defendants' proffered reason for terminating Mr. Hayes was merely a pretext for unlawful discrimination.

*i.*    Plaintiff's Employment Record at Compass Group.

As a review of plaintiff's employment history with Compass Group will demonstrate, Mr. Hayes had distinguished himself as a valued employee at Compass Group. During his twenty four-(24) years of dedicated service, plaintiff had received a number of bonuses, commendable performance evaluations, merit increases and promotions. In fact, Mr. Orlandi, within a year and a half time period prior to Mr. Hayes termination, had given him a performance evaluation rating him an overall "commendable." Mr. Orlandi also specifically noted that "Tim does a good job in getting new business, very active and relates well with the clients . . . He is a true asset to our company," and that "Tim brings strong leadership, new business and a great deal of good organizational skills to this area." Under the section entitled "Identify major areas requiring performance improvement" Defendant Orlandi affirmatively stated: "None." In addition, Defendant Orlandi, on several different occasions in the Spring of 1997, asked the plaintiff to forego any other

career opportunities within Compass Group and remain his Regional Manager. Therefore it is somewhat incredible that a twenty-four (24) employee with a stellar record that needed no room for improvement is terminated in less than a year's time for alleged job performance deficiencies given Mr. Hayes' impeccable employment record and the high praise given by Defendant Orlandi.

Mr. Hayes seemingly rapid descent must be viewed against the backdrop of the comments made by Mr. Orlandi and senior management of Compass Group. Further, the elimination of Mr. Hayes must be viewed in context of the removal of ten more employees in Mr. Hayes age bracket by "one man reorganizations" or other unfounded reasons. Finally, the replacement of these individuals with younger employees provides an additional direct tie to defendants' age biased discriminatory motivation.

*ii.*      <u>Pattern and Practice of Age Discrimination</u>.

The discriminatory treatment directed at the plaintiff is apparent and blatant when placed upon the backdrop of other senior management Compass employees who have met an identical fate. No less than ten (10) employees of similar stature as the plaintiff witnessed their lengthy careers abbreviated in a relatively short period of time. Mr. Canning, was fifty-(50) years age at the time of termination. Mr. Canning was a victim of Mr. Orlandi's one (1) person reorganization. Mr. Patick, age forty seven (47) at the time of termination, was with Compass Group for almost twenty four-(24) years. Mr. Patick was let go as a result of a corporate restructure which again resulted in one (1) position being eliminated, Mr..Patick's. Mr. Wawryzinski was fifty nine-(59) years old when his position was eliminated as part of a one (1) person company reorganization. Mr. Katona was fifty -(50) years old and had been with the company for almost twenty-(20) years before his employment is terminated for alleged job performance reasons. Mr. Jendrzejczyk, is terminated for alleged performance problems after twenty four-(24) years with Compass Group. Mr. Jendrzejczyk was forty three-(43) years of age at the time of his termination. Mr. Correale was

forty three-(43) years of age when his position was allegedly eliminated. Mr. Hannon was approximately fifty-two (52) years old when his position was eliminated.    Mr. Hannon had been with Compass Group for twenty seven (27) years.  Mr. Yundt was forty five-(45) years of age at the time of his termination. Mr. Yundt had been with Compass Group since 1977.  Mr. Swenson was terminated for alleged job performance reasons at the age of fifty five-(55).    Mr. Brommage was terminated at the age of fifty-(50).    Plaintiff reserves the right at trial to introduce evidence of other employees similarly phased out on account of their age.

*iii.*    <u>Defendants' stray remarks</u>.

In addition to his calculating and deliberate elimination from the Compass Group workforce of older employees, the record evidences that Mr. Orlandi had on a number of occasions demonstrated his discriminatory rancor towards the older workforce via his comments. Namely, his characterizing a former district manager as being a manager from the "old school." Mr. Orlandi would often refer to Mr. Wawryzinski (age 50) as the "old style of coaching in Buffalo" and compared him to the former Buffalo Bills coach, Marv Levy. Mr. Orlandi would often refer to the new Eurest style of doing business as a "change in culture." Mr. Orlandi made it known to plaintiff that it wasn't enough that a Compass Employees' performance was good, one had to meet certain standards (i.e. well educated, physically fit, and good looking). In other words in order to succeed at Eurest and its "change in culture" one had to be "young, fast, and aggressive." *See Owens v. New York City Hous. Auth., 934 F.2d 405, 410 (2d Cir.)* (holding that evidence of remarks by employer reflecting discriminatory motive was sufficient to "raise a triable issue as to whether the articulated reasons for [the employer's conduct] were pretextual."). While "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions," a plaintiff can show such animus by "demonstrat[ing] a nexus between the allegedly discriminatory statements and the defendant's decision to terminate [the plaintiff]." *Minshall v. McGraw Hill Broadcasting Co.,* 323 F.3d 1273, 1281 *(10th Cir. 2003)*. See also *Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994)* (holding that "[a] causal nexus can be shown if the allegedly discriminatory comments were directed at the plaintiff, her position, or the defendant's policy which resulted in the adverse action taken against the plaintiff." Although evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may "bear a more ominous significance" when considered within the totality of all the evidence. *Danzer v. Norden Sys., Inc., 151 F.3d 50,* 56 (2d Cir. 1998).

28

*Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2nd Cir. 2000)* .    Defendants' reference to a "change in culture," "old school" and "needs to move into the late 90's" bears a more ominous significance when it coincides with a significant number of older Compass Group employees being terminated either via fictitious job performance issues or one (1) person reorganizations.   Based upon the record it appears that younger employees meet Mr. Orlandi's criteria for "acceptable" employees.

*iv.*    <u>Disparate Treatment</u>

Additionally, younger Compass Group employees were given an opportunity to redeem themselves via being demoted rather then being terminated.   The older work force was identified, targeted and terminated, allegedly for job performance reasons.   Meanwhile a younger employee, such as Ms. Lavergne, was demoted rather then terminated from her District Manager position.   At the time of demotion, Ms. Lavergne was under the age forty (40).   Also, on information and belief, Mr. D'Amico was demoted from his District Manager position.   At the time of demotion, Mr. D'Amico was in his mid-thirties (30's).   By affording the younger employees opportunities to save their employment at Compass Group, defendants have again shown their discriminatory rancor for the older individuals.   Moreover, upon asking Mr. Orlandi the reasoning behind not offering Mr. Hayes a demotion, Mr. Orlandi stated, under oath, that it is the philosophy of management not to demote an employee.

Q.    Mr. Orlandi, why didn't you demote Mr. Hayes back down to District Manager?
MR. BROMBERG:    Just for the record.  You said that was the last line of questions.
MS. BUFFKIN:This is my final question.
MR BROMBERG:    Okay.

A.    It's generally the philosophy of management that when you demote a person and decrease their pay, that it doesn't work.  A person becomes disgruntled, sits

amongst their peers and are embarrassed.  And it's not a good situation.

Q.    Is that the only reason you didn't, despite his request that you do so, either assist
      Mr. Hayes in finding another position in Compass Group or demote him down to a
      District Manager?

A.    I had conversation with my boss Will about it, and he also encouraged the
      philosophy that it's not a good thing to demote people. It never works. I have done
      that in the past and it hasn't worked.  So based on that conversation, we made the
      decision that it would be in the best interest of the company.  (Orlandi Dep. Vol II,
      pp. 280 -281)

Thus, the defendants' philosophy when applied to its previous practice really means that it is not in

the best interest of the company to demote older people.

Additionally, Mr. Orlandi seems to be in direct conflict with Compass Groups' policy

regarding demotions.    Demotions are specifically recognized in the Compass Group USA's

Compensation Management Guidelines, September 1997 (Document 0029-0057 at 0050).  This

not only evidences the disingenuous nature of defendants' responses, it further demonstrates that

the defendants were treating the older employees less favorably than the younger ones.  "A showing

of disparate treatment - that is, a showing that the employer treated plaintiff 'less favorably than a

similarly situated employee outside his protected group-'- is a recognized method of raising an

inference of discrimination for purposes of making out a prima facie case." *Graham, 230 F.3d at

39.*

d.    "Same Actor Inference" is Inapplicable

The defendant claims entitlement to the same actor inference based upon the claim that Mr.

Orlandi promoted Mr. Hayes.   Such is not the case. As the record shows, Mr. Hayes had been

supervised by Ms. Wedekind for a year prior to Mr. Orlandi's promotion to Regional Vice

President. It was Ms. Wedekind's evaluation and recommendation that resulted in Mr. Hayes' promotion to the position of Regional Manager. Mr. Hayes had an excellent working relationship with Ms. Wedekind and Ms. Wedekind was in the position to recommend her replacement. Mr. Orlandi concedes he did not have much contact with Mr. Hayes prior to the recommendation for the plaintiff's promotion. Based upon these facts and circumstances, it would have been suicidal to veto the promotion of Mr. Hayes, where Mr. Orlandi had, at that time, no opportunity to build a fabricated foundation for refusing to promote Mr. Hayes.

Therefore, the "same actor inference" line of cases is not applicable to the defendant, because Mr. Orlandi was, in essence, simply approving the evaluation of Ms. Wedekind recommending the promotion of Mr. Hayes, particularly where Mr. Orlandi had only recently himself been promoted to the position of Regional Vice President.


II.    **Defamatory Statements Made by Defendant Orlandi are not Privileged**.

In the employer-employee context there are a number of statements that may be protected by a qualified privilege. However, statements made by a defendant that are both defamatory and malicious- that is, with knowledge of its falsity or reckless disregard as to its truth. fall outside the scope of this qualified privilege. "Communications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege . . . Although a qualified privilege insulates many defamatory statements and shields many defendants from liability, the privilege does not protect a defendant who makes statements that are both defamatory and malicious." *Gaudio v. Griffin Health Services Corporation, 249 Conn. at 545.* "Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false . . . A

negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth." (Citations omitted; internal quotation marks omitted.) *Chadha v. Shimelman, 75 Conn. App. 819, 827 (2003).  (See also Kelley v. Bonney, 221 Conn. 549, 563, 606 A.2d 693 (1992)* "To find that the defendants were liable for defamation. . . the [court] was required to find that the defendants published false statements that harmed the plaintiff, and that the defendants were not privileged to do so.*")*

        In the instant action, upon being wrongfully terminated by the Defendants on bogus allegations/grounds, the plaintiff, in an effort at either acquiring a new position at Compass Group or being reinstated into his former position went to his previous direct supervisor, Ms. Wedekind. After a two (2) day search into assisting the plaintiff secure a position with Compass Group, Ms. Wedekind notified Mr. Hayes that it was too late that the "well had been poisoned" by defendant Orlandi.  Plaintiff took this to mean that Mr. Orlandi knowingly published false information about the plaintiff that rendered him unemployable at Compass Group and literally destroyed Mr. Hayes' twenty four-(24) year career.  Additionally, Mr. Orlandi had with malice defamed the plaintiff in the form of an UC-61.  Therefore, having made these publications with malice, Defendant Orlandi's statements are not privileged.    "There are two facets to the defense of privilege. The occasion must be one of privilege, and the privilege must not be abused. Whether the occasion is one of privilege is a question of law. . . . [W]hether the privilege was abused . . . depends upon whether there was malice in fact . . . in uttering and broadcasting the alleged defamatory matter." *Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 615, 116 A.2d 440 (1955); see also Bleich v. Ortiz, 196 Conn. 498, 504, 493 A.2d 236 (1985) (*the privilege had been abused because the defendant's agents had made the statement about the plaintiff with actual malice - that is, with knowledge of its falsity or reckless disregard as to its truth;  4 Restatement (Second), Torts § 600 (1977) (qualified privilege fails if statement made with knowledge of falsity or reckless

disregard as to truth).

Thus, the plaintiff has raised questions of fact as to whether the defendants' proffered reasons for terminating his employment were true. This line of questioning is directly relevant as to whether Mr. Orlandi's false publications to Ms. Wedekind about Mr. Hayes', his performance, and the reason for his termination, were made with actual knowledge that they were false or with reckless disregard of whether they were false.

The plaintiff reserves the right to introduce evidence at trial of additional publication of defamatory statements made by the defendant Orlandi about Mr. Hayes' job performance. Since there are genuine issues of material fact at issue, the defendants' motion for summary judgment directed at plaintiff's defamation count must also be denied

III.     **Defendant Compass Group has violated ERISA.**

As with the age discrimination analysis discussed above, causes of actions alleging discriminatory practices against a participant or beneficiary for exercising his or her rights under an employee benefit plan also utilize the application of the *McDonnell-Douglas* paradigm. "We hold that the *McDonnell Douglas* presumptions and shifting burdens of production are equally appropriate in the context of discriminatory discharge cases brought under § 510 of ERISA." *See Gavalik v. Continental Can Co., 812 F.2d 834*, 852 (3d Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (applying *McDonnell Douglas* in ERISA § 510 case). The allocation of burdens and imposition of presumptions in Title VII and ADEA cases recognizes the reality that direct evidence of discrimination is difficult to find precisely because its practitioners deliberately try to hide it. Employers of a mind to act contrary to law seldom note such a motive in their employee's personnel dossier. Specific intent will only rarely be demonstrated by "smoking gun" proof, *see Gavalik*, 812 F.2d at 852, or by "'eyewitness' testimony as to the employer's mental processes," *U.S. Postal Serv. Bd. of Governors v. Aikens*,, *460 U.S. 711*, 716, 103 S.Ct.

*1478, 1481, 75 L.Ed.2d 403 (1983); see also Dillon v. Coles, 746 F.2d 998, 1003 (3d Cir. 1984).*

As mentioned above, plaintiff has easily met its initial burden. Applying these standards in the ERISA context Mr. Hayes was forty-seven (47) years of age when he was terminated. Second, plaintiff's extensive experience, qualifications and accomplishments have demonstrated that he was qualified for the position he held. Third, plaintiff employment was summarily terminated in June 1998. Finally, Mr. Hayes' employment termination occurred under circumstances giving rise to a inference of discrimination in light of the most recent performance appraisal rating him as "Commendable" and Mr. Orlandi's the fact that he was replaced by a younger less qualified individual. Hence, plaintiff has offered adequate evidence to defeat summary judgment at the prima facie stage.

The burden of production therefore shifts to Compass Group. As mentioned before defendants have articulated job performance issues as its reason for terminating Mr. Hayes.

Defendants, having articulated a legitimate reason for plaintiff's discharge, plaintiff's burden at trial would be to prove by a preponderance of the evidence that the reasons advanced are simply a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).* In essence, Mr. Hayes can show that the defendants' reason is unworthy of any credence. "We have previously indicated in accordance with these basic principles that pretext can be established by a showing that the asserted neutral basis was so ridden with error that the employer obviously could not honestly have relied on it. *Lieberman v. Gant, 630 F.2d 60, 65 (2nd Cir. 1980) (Title VII). See Sparks, 830 F.2d at 1564* ("implausibility" of alleged reason sufficient to create genuine issue of material fact); *Sorba v. Pennsylvania Drilling Co., 821 F.2d 200, 205 (3d Cir. 1987)* (reversing entry of summary judgment because of "inconsistencies and implausibilities in employer's proffered reasons for discharge. . . ."), *cert. denied, ___ U.S. ___, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988); Lieberman,*

34

*630 F.2d at 65 (2d Cir. 1980)* (asserted reason might be "so ridden with error that defendant could not honestly have relied up on it"); *Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979)* ("The more idiosyncratic or questionable the employer's reason, the easier . . . to expose it as a pretext. . . .").

As mentioned above, defendants' articulated reason for terminating the plaintiff is so wrought with error that a reasonable jury could find that it is merely a pretext for discriminatory rancor. More specifically, it is highly unlikely that Mr. Hayes, with his twenty-four (24) years of dedicated service, impeccable employment record which includes bonuses, promotions, and merit increases could now be viewed as an undesirable employee. Even more incredulous is the fact that a recent performance appraisal by Mr. Orlandi was rated as "Commendable" and that Mr. Orlandi specifically noted that there was no areas that needed improvement. Thus, defendants' fabricated job performance issues flies in the face of Mr. Hayes twenty-four (24) year track record at Compass Group. Moreover, the older Compass Group population as a whole has seen a number of its populous removed because of alleged job deficiencies, fictitious resignations, one (1) person reorganizations and one (1) person restructures. Finally, the alleged job deficiencies are a hotly contested fact as evidenced by the conflicting Local Rule 56 Statements and Mr. Hayes' affidavit.

As a consequence, a reasonable jury could find from plaintiff's evidence viewed in the light most favorable to him that Compass Group did intentionally terminate him in order to interfere with attainment of his severance benefits in violation of ERISA.

IV.    **Intentional Infliction of Emotional Distress**.

In an intentional infliction of emotional distress claim, the plaintiff has the burden of alleging that, "the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was the likely result of his conduct." *Parsons v. United Technologies Corporation, 243 Conn. 66, 101 (1997).* In the case at bar, the plaintiff has certainly

35

demonstrated that defendants' conduct would result in emotional distress. Moreover, Mr. Orlandi's: inducing Mr. Hayes to forego other job advancements within Compass Group on several separate occasions; representing to Mr. Hayes that he had complete job security in the Northeast Region thereby convincing Mr. Hayes to borrow fifty thousand dollars ($50,000.00) against his 401k and buy a home in Connecticut; creating fictitious job performance deficiencies in an effort at papering the termination trail; callously terminating Mr. Hayes' employment after twenty four (24) years of dedicated service; ensuring that Mr. Hayes would not be able to secure another position with Compass Group by defaming his good name and business reputation; and then preventing him from receiving the Enhanced Severance Compensation that he had earned and was entitled to, certainly demonstrates that the defendants' conduct transgresses the bounds of sociably tolerable behavior. *Parsons*, 243 Conn. at 88-89. Moreover, the defendants should have known that emotional distress was a likely result of its conduct.

As a result of defendants' unlawful and egregious behavior the plaintiff has suffered enormous emotional distress. The idea that at the age of forty seven (47) with no job, a new home, a four year old daughter, and no prospects of employment in the immediate future was emotionally disturbing to the plaintiff and his family. As the plaintiff notes in his affidavit, attached hereto, every aspect of his life was effected by Mr. Orlandi and Compass Group's egregious behavior. He feared (and still does) going out in public, particularly to well attended events for fear that he may run into a former coworker or a former client who views him as a failure. Mr. Hayes' was afraid to get the mail, in the event that there would be a bill that he could not pay. Mr. Hayes and his fiancee all were emotionally rocked by the unlawful conduct of the defendants. Connecticut courts have held that emotional distress is severe where it reaches a level which "no reasonable person could be expected to endure." *See Mellaly v. Eastman Kodak*, 42 Conn. Sup. 17, 597 A.2d 846, 848 (1991).

36

In the instant action, plaintiff has sufficiently demonstrated that the emotional distress he suffered as a result of the defendants unlawful behavior reached a level that no reasonable person could be expected to endure. Moreover, plaintiff suffered loss of sleep, nervousness, vomiting, and nausea. *see, e.g., Rosenberg,* 1997 WL 35808 at *2 (describing physical manifestations of plaintiffs emotional distress). The facts alleged in his affidavit, taken in the light most favorable to plaintiff, supports his claim of severe emotional distress. Accordingly, defendants' motion for summary judgment dismissing plaintiffs claims of intentional infliction of emotional distress must be granted.

## V.    __Conclusion__

There are disputed facts in connection with Plaintiff, Tim Hayes' claim for age discrimination, the severance benefits that he was entitled to but for defendants' discriminatory practices in violation of ERISA, his claim for defamation, and his claim for intentional infliction of emotional distress. Thus, summary judgment is not appropriate and a jury trial is necessary as to these causes of action.

WHEREFORE, Plaintiff hereby respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment.

PLAINTIFF
TIMOTHY HAYES

_____
Stephen F. McEleney
McEleney & McGrail
His Attorneys
363 Main Street
Hartford, Connecticut  06106
Federal Bar No. ct04073

37

## CERTIFICATION

I HEREBY CERTIFY, that a copy of the foregoing Motion in Opposition to Defendants' Motion for Summary Judgement has been mailed on this 5th day of January, 2004 to the following counsel of record:

*Christopher Kenney, Esq.*
*Margaret Paget, Esq.*
*Sherin and Lodgen LLP*
*100 Summer Street*
*Boston, MA  02110*

By _____
Stephen F. McEleney, Esq.