UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TIMOTHY HAYES,
   Plaintiff,

   v.

COMPASS GROUP USA, INC.,
d/b/a EUREST DINING SERVICES
and CARY ORLANDI,
   Defendants.

Civ. No. 3:00cv0973(AHN)

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Timothy Hayes ("Hayes") brings this employment discrimination action against his former employer, Compass Group USA, Inc., d/b/a Eurest Dining Services, ("Compass"), alleging statutory violations under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001. Hayes also alleges state law claims of negligent and intentional infliction of emotional distress and defamation against Compass and his former supervisor, Cary Orlandi ("Orlandi").

Compass and Orlandi now move jointly for summary judgment on the respective counts of Hayes's complaint. For the following reasons, defendants' joint motion [dkt. # 45] is granted in part and denied in part.

FACTS

The evidence submitted to the court reflects the following undisputed material facts construed in the light most favorable to Hayes.

Compass provides on-site cafeteria and restaurant-style dining services to businesses and other institutions throughout the United States. Hayes was employed by Compass from July 1973, until his termination on June 1, 1998, at the age of forty-seven. Hayes was initially hired as Chef Manager. Three years later, he was promoted to General Manager. A year after that, Hayes was promoted to District Manager. Hayes worked as a district manager for nearly twenty years and consistently received "commendable" performance ratings by his superiors.

In June 1996, Orlandi, who had just been appointed Regional Vice President for the Northeast, promoted Hayes to Regional Manager. In his new position, Hayes was responsible for food operations in Connecticut, Western Massachusetts, Vermont, and the capital region of New York. His primary duties were to maintain and improve dining services and to develop new business. The district managers for those regions reported to Hayes, and Hayes reported to Orlandi.

2

In December 1996, after only six months as a regional manager, Orlandi gave Hayes a performance evaluation of "commendable."  Orlandi stated that Hayes "[did] a good job in getting new business, [was] very active[,] . . . relat[ed] well with the clients . . . [and] was a true asset to [Compass]." Orlandi also stated that Hayes possessed "strong leadership" and "good organizational skills."  Orlandi noted that there were no major areas in which Hayes required improvement.  In addition to this written evaluation, Orlandi regularly complimented Hayes's job performance.

In the spring of 1997, Hayes was interviewed for a sales position in another sector within Compass.  He viewed that position as an opportunity to advance his career.  After the interview, Orlandi told Hayes that he was being seriously considered for the position, but asked him not to take it because he could not run the Northeast region without him.  As a result, Hayes withdrew his application.  Some time later, when another sales position became available, Orlandi again asked Hayes not to apply for the job, and Hayes acquiesced.  Hayes interpreted Orlandi's actions to mean that his job was secure, and took out a $50,000 loan against his 401K savings to purchase a new home.

3

By August 1997, Orlandi's opinion of Hayes's job performance began to change. At that time he sent Hayes two memos stating concerns about his accounts. In the first memo, dated August 5, 1997, Orlandi noted that thirteen of Hayes's accounts were performing badly and showed decreased profits despite increased sales. Hayes responded by stating that "increased sales did not automatically equate to increased profits" and provided explanations for each of the accounts. Orlandi accepted his explanations. In the second memo, dated August 13, 1997, Orlandi referred to a negative customer survey from Dow Jones, an important client. Despite it derisive tone, the survey indicated that Dow Jones had a good relationship with Hayes and that Hayes was aware of its concerns and was working to address them. Still, Orlandi was disappointed that Hayes had not "shared [his] difficulties and management changes" with him and asked that "he not make management changes without [his] knowledge" and to keep him "well informed."

Orlandi also had concerns about Hayes's accounting practices. In a September 24, 1997, memo that he drafted but never sent to Hayes, he admonished Hayes about improper item charges against certain accounts and warned Hayes that such practices constituted immediate grounds for termination. Orlandi did not send the memo to Hayes because he realized that Hayes had

4

acted pursuant to what Hayes had believed were his instructions. At any rate, Hayes corrected the item charges before they were posted into the accounting system.

In another memo dated September 30, 1997, Orlandi indicated to Hayes that his "financial reporting and financial performance[] throughout 1997," was unsatisfactory and that he could no longer tolerate Hayes's "multitude of errors and mistakes." In response, Hayes stated that he was "shocked and disappointed" with Orlandi's memo and noted "that the Middletown [d]istricts [were] very close to target throughout the year, finishing 1997 13k better than plan." Hayes also acknowledged the problems with Electric Boat, but stated that "he could not force Electric Boat to meet [Compass's] schedule for completing the facility work necessary for [Compass] to realize the financial turnaround desired." Hayes also commented that delays by Electric Boat caused Compass's costs for the account to be $60,000 more than Compass had anticipated, but noted that "future concessions from Electric Boat" would greatly improve profitability.

On October 9, 1997, Orlandi sent Hayes a memo with cost-cutting suggestions for improving the Electric Boat account and

5

stated that he had "heard a lot of good ideas from everyone" at the last meeting.  On October 13, 1997, Hayes sent Orlandi a follow-up memo regarding Electric Boat and reported that the account would "continue to lose approx. $1800/wk until the Wet Dock opens."

On October 14, 1997, Hayes notified Orlandi that the administrator at J.C. Penney, Jim Franchere ("Franchere"), planned to take competing bids for the dining services account that Compass was handling because of an outdated contract, old vending machines, catering cost increases, and service issues in the satellite cafeteria.  Hayes also listed the remedial measures he had taken and stated that "[w]e have a very good chance to remove this account from jeopardy if we move quickly and follow through on our promises."

Hayes fully implemented the action plans that were devised to deal with the service issues for Electric Boat and J.C. Penney.  As a result, he managed to retain both accounts.

In a December 15, 1997, memo to Hayes, Orlandi listed several discrepancies he found in the financial figures that Hayes had submitted in his October 13, 1997, memo.  Orlandi stated that "[t]here was a lot of opportunity financially to do

better in fiscal 1997" and that he hoped "1998 [would] be a
better year."

In the 1997 year-end performance evaluation, Orlandi rated
Hayes's overall performance as "[a]pproaching [e]xpectations +,"
which ranked below "[c]ompetent" but above "[m]arginal."  Orlandi
noted in the evaluation that Hayes had "problems throughout the
year," and had lost six accounts (Kimberly Clark, Lane Press,
Axiom, Naval Hospital, Security, and Middlesex).  Orlandi further
noted that while Hayes had "excellent accounting knowledge" and
was "even-tempered" and "hardworking," he had a problem with
financial reporting and had a tendency to "do things his way"
rather than following the "company's agenda."  Orlandi also
stated that Hayes's style was more "reactive than proactive," and
that he needed to be better involved with the district managers
he supervised.  Orlandi's "action plan" for Hayes was "continued
supervision and coaching."  While Hayes disagreed with Orlandi's
assessment of his performance, he did not challenge it.

Orlandi's concerns about Hayes's job performance continued
in 1998.  For instance, in January, Orlandi found several
discrepancies in the budget numbers that Hayes had submitted for
1997.  The discrepancies were the result of changes in accounting

7

practices that had been instituted after the end of the previous
year.  Then, in March, the president of the Eurest division,
James Carothers, contacted Orlandi about Middlesex Community
College ("MCC"), which had terminated its service agreement with
Compass in 1997, and in a subsequent survey complained about a
lack of attention.  MCC had not been a financially rewarding
account for Compass and Orlandi had determined that the account
would be closed unless MCC agreed to a higher fee arrangement.
Indeed, Orlandi had sent MCC a strongly worded letter requesting
the new fee.  MCC took offense and refused to pay the higher fee,
and the contract was not renewed.  Although Robert Berg, the
then-director at MCC, never expressed to Hayes that he was
dissatisfied with Hayes's own performance, he stated in an
affidavit that "without reservation" Hayes had "failed to
properly manage the food services" at the college and "was
completely unresponsive to [his] repeated pleas to make basic
improvements."[1]

---

[1]    Hayes states that Berg's declaration is irrelevant and, in
substantial part, denies its allegations.  He also argues that
Berg's unsworn statement cannot be considered as evidence in
support of Compass's instant motion because it does not conform
with 28 U.S.C. § 1746.  Hayes takes issue with the fact that the
declaration omits the phrase "that the foregoing is true and
correct," and states only that it is made "under penalty of

8

In May 1998, Orlandi sent Hayes a "counseling report" in which he expressed disappointment with Hayes's performance and stated a number of "problems and items" and "performance improvements" he wanted Hayes to make immediately.  Orlandi also noted that he wrote the memo "purely to avoid any misunderstandings."  Hayes took issue with Orlandi's characterization of his work performance, but did not respond because he was terminated soon afterward.

On May 30, 1998, Hayes met with Orlandi at Orlandi's office in Boston, Massachusetts.  Orlandi informed Hayes that he was being terminated for poor job performance.  Hayes would have accepted a demotion in lieu of termination, but Orlandi did not believe that demotions were an effective means of dealing with employees who had performance issues.  On June 1, 1998, Hayes signed a separation agreement with Compass in which he

---

perjury."  There is no merit to Hayes's claim.  Section 1746 merely requires unsworn declarations to "substantially" follow a prescribed form.  Berg's declaration satisfies § 1746 because the "under penalty of perjury" clause in his statement imposes an obligation to state the truth or be exposed to prosecution for perjury.  See Goldman, Antonetti, et. al. v. Medfit Int'l, Inc., 982 F.2d 686, 689-90 (1st Cir. 1993) (citing Davis v. Frapolly, 756 F. Supp. 1065, 1067 (N.D. Ill. 1991)) (holding that unsworn statements signed under penalty of perjury may be considered as evidence in support of a motion for summary judgment)).

acknowledged his termination.  Orlandi hired Catherine Cape

("Cape"), a less-experienced forty year-old woman, to replace

Hayes.

From 1995 to 1998, Compass also terminated other employees

who were over the age of forty: (1) George Swenson ("Swenson")

was terminated in 1995 for alleged job performance issues despite

the fact that he was in charge of one of Compass's top performing

regions; (2) Brian Jendrzejczyk ("Jendrzeyczyk"), was terminated

in 1996 for poor job performance; (3) Saverino Correale

("Correale") was terminated on April 18, 1997, because his

position was eliminated; (4) Mark Katona ("Katona") was

terminated on March, 20, 1998; (5) Wayne Patick ("Patick") was

terminated on June 12, 1998, as part of a one-person

reorganization; (6) Joseph Wawrzynski ("Wawrzynski") was

terminated on September 25, 1998, because his position was

eliminated; (7) George Yundt ("Yundt"), was terminated in

December 1998; (8) Mark Hannon ("Hannon"), was forced to resign

in 1999; (9) Phillip Canning ("Canning") was terminated on March

26, 1999, as part of a one-person reorganization.  During this

same time period, Compass settled an age discrimination claim

brought by Geraldine Kuczmarksi ("Kuczmarksi").

At the same time, Compass demoted rather than terminated two employees under the age of 40, Paul D'Amico ("D'Amico") and Anne Lavergne ("Lavergne"). D'Amico was terminated for poor job performance. Lavergne, who at the time was 39, was demoted because her position was eliminated.

Also during the relevant period of time, Orlandi and another supervisor made age-related comments. Orlandi often referred to older managers as "old school," and joked that Wawryzinski was the "old style of coaching in Buffalo," apparently in reference to former Buffalo Bills Coach, Marv Levy. In a performance appraisal, Orlandi stated that Canning was "very slow to change." Orlandi also remarked that Compass employees had to be well-educated, physically fit, and good-looking, and that Compass had a new mode of doing business that constituted a "change in culture." Another supervisor commented that Katona "needs to move into the nineties."

It is undisputed that Hayes filed administrative complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Federal Equal Employment Opportunities Commission ("EEOC") and that Compass was properly served with both complaints.

STANDARD

Summary judgment will be granted if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the nonmovant.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and all ambiguities and inferences that may reasonably be drawn from the facts must be viewed in the light most favorable to the nonmoving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Where, as here, the nonmovant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing to an absence of evidence to support an essential element of the nonmovant's case.  See Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 270 (2d Cir. 1999) (citing cases).

12

DISCUSSION

I.   Age Discrimination

Hayes alleges that Compass discriminated against him on the
basis of age in violation of both the ADEA and the CFEPA when it
terminated him and hired Cape, a younger and less experienced
woman.[2]  Compass argues that summary judgment is appropriate on
the ADEA and CFEPA claims because Hayes cannot establish that its
decision to terminate him was due to intentional age-based
discrimination rather than its articulated nondiscriminatory
reason -- poor job performance.

Under the ADEA, it is "unlawful for an employer . . . to
fail or refuse to hire or to discharge any individual or
otherwise discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's age." 29 U.S.C. § 623(a)(1).  ADEA
claims are analyzed under Title VII's burden-shifting framework
set out in McDonell Douglas Corp. v. Green, 411 U.S. 792 (1973).
See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000).

---

[2]   Because Connecticut law in relevant part follows the ADEA,
see Levy v. Comm'n on Human Rights & Opportunities, 236 Conn. 96,
103, 107-111 (1996), the court considers Hayes's CFEPA claim
together with his ADEA claim on the basis of federal precedent.

13

First, a plaintiff must establish a prima facie case of age discrimination. If the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory business reason for its action. If the employer articulates such a reason, the burden then shifts back to the plaintiff to show that the employer's proffered reason is mere pretext and that age was a motivating factor.

For purposes of this summary judgment motion, the court assumes that Hayes has met his de minimis burden of establishing a prima facie case of age discrimination. The court also assumes, based on the evidence in the summary judgment record, that poor job performance is a legitimate, non-discriminatory reason for terminating Hayes, and that Hayes has created a triable issue of fact as to whether Compass's proffered reasons are pretextual.[3] The dispositive issue, therefore, is whether

---

[3] Based on the undisputed evidence in the record, Hayes has submitted the existence of a disputed factual issue as to whether Compass's articulated reason for terminating him for poor job performance was pretextual in that: (1) until 1997, Hayes consistently received positive job performance evaluations; (2) Orlandi accepted Hayes's explanation for why some of his accounts were performing badly; (3) the August 13, 1997, Dow Jones survey indicated that it was content with Hayes's work; (4) Orlandi drafted but never delivered the September 24, 1997, memo regarding Hayes's accounting practices because he realized that Hayes had acted pursuant to his direction; (5) Hayes managed to retain the Electric Boat and J.C. Penny accounts; (6) Compass planned to terminate its service contract with MCC even before MCC decided not to renew the contract; a decision which was due

14

Hayes has submitted sufficient evidence from which a jury could find that such pretext was intended to mask age discrimination. See Slattery v. Swiss Reinsur. Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001) (reasoning that "the final burden rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual but also that the defendant discriminated against the plaintiff"); Schnabel, 232 F.3d at 88 (finding that although a jury could conclude "that defendants' stated reasons for firing the plaintiff were pretextual," summary judgment was appropriate because "plaintiff [had] not demonstrated that the asserted pretextual reasons were intended to mask age discrimination").

To create a factual dispute as to Compass's discriminatory intent, Hayes claims that the evidence shows (1) a pattern or practice of age discrimination because ten other employees over the age of 40 were terminated during the three year period, 1995-1998;[4] (2) a preference for demoting rather than terminating

_____

in part to Compass's request for a higher fee agreement; and (7) Hayes was terminated without being given time to correct the problems raised by Orlandi in his May 4, 1998, memo.

[4]    Compass has moved to strike from the summary judgment record [dkt. # 57] Hayes's exhibits A-F [dkt. # 56] which consist of complaints and charges of other Compass employees that have brought age discrimination suits.  Compass argues that the

15

employees under the age of 40, while terminating employees over

40; and (3) stray comments made by Orlandi and another

supervisor.

    A.  Statistical Evidence

    Hayes's statistical evidence of other terminations may

establish a pattern or practice of age discrimination if it

evinces a statistical disparity.  See Malave v. Potter, 320 F.3d

321, 325-26 (2d Cir. 2003) (holding that while "no bright line

rules exist to guide courts in deciding whether a plaintiff's

statistics raise an inference of discrimination," the statistics

must, when combined with other evidence, be of a kind and degree

sufficient to reveal (1) a statistical disparity that (2) is

causally related to the challenged practice).  Hayes's evidence

shows that Compass discharged 10 managers who were over 40 during

_____

exhibits constitute inadmissible hearsay and are not relevant to
the issue at bar.  The court finds, however, that because Hayes
does not offer the exhibits to prove the truth of the matters
asserted therein, but to demonstrate that other employees over
the age of 40 were terminated, the exhibits do not constitute
inadmissible hearsay under Federal Rule of Evidence 802.  But see
Haskell v. Kaman Corp., 743 F.2d 113, 121-122 (2d Cir. 1984)
(holding that "pattern and practice" testimony by discharged
officers in an age discrimination case was inadmissible because
the officers gave subjective evaluations of their own and their
fellow officers' performance without furnishing the bases for
their evaluations).  Compass's motion to strike [dkt. # 57] is
therefore denied.

a 3-year period.  But, as Compass points out, that number is statistically insignificant in light of the fact that, during the same period, Compass employed more than three times as many managers over 40 (597) than managers under 40 (167), and that the discharge ratio for managers over 40 was actually the same as the ratio for managers under 40.  Thus, the fact that 10 managers were terminated over a period of 3 years is not sufficient to constitute a statistical disparity.  See Smith v. Xerox Corp., 196 F.3d 358, 365 (2d Cir. 1999) (reasoning that plaintiffs' statistical evidence on disparate impact claims had to be "of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group"); Haskell v. Kaman Corp., 743 F.2d 113, 121 (2d Cir. 1984) (finding that the statistical sample consisting of ten terminations over an 11-year period was not statistically significant, "particularly against a background indicating that most of the Company's many officers had been employed by it for 10 or more years and were more likely than not in the protected age bracket").  Accordingly, Hayes has not submitted sufficient evidence to establish a pattern or practice of age discrimination.

17

B.  Other Evidence of Discrimination

Hayes's evidence, however, could permit a jury to conclude that Compass treated employees under 40 differently than those over 40.  Specifically, the record shows that Hayes recommended to Orlandi that he demote rather than terminate an over-40 district manager who had work-performance issues, but that Orlandi rejected his recommendation and terminated the manager. The evidence further shows that another supervisor, who concurred with Orlandi's decision to terminate that manager, stated that such an option, i.e., demotion rather than termination, was reserved for employees who had an opportunity to develop their careers.  This difference in treatment is also shown by Hayes's evidence that nine other managers over the age of 40 were terminated for either poor performance or one-person reorganizations, but that two managers under 40 were instead demoted for the same reasons.

The other evidence Hayes relies on to show that age was a factor in the decision to terminate him consists of remarks that Orlandi and another supervisor made that, arguably, show age-based animus.  Specifically, the record indicates that Orlandi

referred to a fifty-year-old district manager as "old school" and commented that the managerial style of another over-40 manager was "very slow to change."  Also, on numerous occasions Orlandi remarked that Compass employees had to be well-educated, physically fit, and good-looking, and referred to the new mode of doing business at Compass as a "change in culture."  There is also evidence that another supervisor remarked that an over-40 manager needed to "move into the nineties."

As a general rule stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination, unless there is other evidence of discrimination in the record.  See Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998).  Here, the record contains other indicia of discrimination and that evidence gives more of an ominous significance to the remarks of Compass's decisionmakers.  See id. at 57 (finding that a supervisor's comments to senior members of his staff that, inter alia, they were "a bunch of alte cockers [i.e., old fogies]," and "that one of the goals for the upcoming year was to get some younger people on board (to raise the IQ of the staff)," precluded summary judgment in light of other evidence in the record indicative of

19

age discrimination).

In sum, even though Hayes's statistical evidence is not sufficient to establish a pattern or practice of age discrimination, the evidence showing a possible inconsistent policy of terminating managers over 40 but demoting managers under 40, and the age-related remarks of two decisionmakers, is sufficient to permit a jury to consider whether Compass terminated Hayes, at least in part, because of his age. See In re Unisys Sav. Plan Litig., 74 F.3d 420, 433 n.10 (3d Cir. 1996) (reasoning that "[i]n practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent"). It thus remains within the province of the factfinder to ascertain the credibility and the weight of the evidence in this case. See id. Accordingly, Compass's motion for summary judgment on Hayes's age discrimination claim is denied.

II.   Interference with ERISA Benefits

Next, Hayes claims that the manner in which he was terminated constitutes a violation of ERISA. Specifically, Hayes

20

contends that Compass chose to terminate him for poor performance in order to reduce his severance benefits from an estimated $40,000 to approximately $15,000; the former amount being what he would have received had he left Compass for any other reason. He further argues that Orlandi intentionally did this to avoid having the larger amount of severance pay charged against his operating budget, which, according to Hayes, would have likely prevented Orlandi from meeting projected budget numbers and made Orlandi ineligible for a personal bonus. Compass argues that summary judgment is appropriate because Hayes fails to rebut its evidence that Compass terminated him for poor performance and has offered no other evidence from which a jury could infer that Orlandi intentionally interfered with his severance benefits.

Section 510 of ERISA prohibits terminations "for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan]." 29 U.S.C.A. § 1140. Stated differently, a § 510 claim involves three elements:  1) prohibited employer conduct; 2) taken for the purpose of interfering; 3) with the attainment of any right to which the employee may become entitled. See Romero v. Smithkline Beecham, 309 F.3d 113, 119 (3rd Cir. 2002). In short, Hayes must show that Orlandi was at least in part

21

motivated by the specific intent to prevent Hayes from attaining the full amount of his benefits.  Hayes also must show that the loss of benefits was a motivating factor behind his termination, and not merely a consequence of being terminated for poor performance.  See Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988).  To determine whether Hayes's loss of benefits was a motivating factor and not merely a consequence of his termination, the court applies the McDonell Douglas standard. See id. at 1112 (holding that McDonell Douglas presumptions and shifting burdens of presumption are equally appropriate in the context of discriminatory discharge cases brought under § 510 of ERISA).

Because the court assumes that Hayes has established a prima facie case of interference, the central question is whether the summary judgment record contains sufficient evidence that would permit a reasonable jury to infer that Orlandi's articulated reason for firing him -- poor job performance -- is a pretext for Orlandi's intent to prevent Hayes from attaining the full amount of his ERISA benefits.  Although Hayes has provided evidence showing that Compass's articulated reason is pretextual, see Part I, infra, he has not adduced any evidence satisfying the second element of a § 510 claim:  that Orlandi terminated him, at least

in part, with the intent to interfere with the amount of his severance benefits. See Romero, 309 F.3d at 119. In particular, Hayes fails to provide any evidence that the amount of benefits payable to him would, in fact, have been included in Orlandi's operating budget. See Dister, 859 F.2d at 1117-18 (affirming district court's grant of summary judgment for defendant because plaintiff bringing § 510 claim provided only "scant evidence which might [have established] a discriminatory motive"); MacKay v. Rayonier, Inc., 75 F. Supp.2d. 22, 29 (D. Conn. 1999) (granting summary judgment to defendant on § 510 claim because plaintiff "utterly failed to come forward with any specific facts showing that a genuine issue of material fact exist[ed] . . . [and] that deprivation of his ERISA benefits was the real motivation behind the firing"). Thus, because Hayes has not provided sufficient evidence to support his claim of interference with ERISA benefits, he has not established the existence of a genuine factual dispute and summary judgment must enter in favor of Compass.

III. Intentional and Negligent Infliction of Emotional Distress

Compass and Orlandi also move for summary judgment on Hayes's claims of intentional and negligent infliction of emotional distress. Hayes alleges that he suffered emotional

23

distress, embarrassment, humiliation, and anxiety as a result of his termination. In particular, Hayes claims that, due to his termination, he fears going out in public because he might run into former co-workers or clients who, in his opinion, would view him as a failure. He also submits that he is afraid to retrieve his mail due to the likelihood that there will be bills he cannot pay.

In order for Hayes to survive summary judgment on both the negligent and intentional infliction of emotional distress claims, Hayes must proffer evidence that creates a factual dispute as to whether Orlandi's alleged conduct exceeded all bounds usually tolerated by decent society. See Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205 (2000); Martin v. Town of Westport, 329 F. Supp.2d 318, 337 (D. Conn. 2004). Such conduct must have been so outrageous in character, and so extreme in degree, that it went beyond all possible bounds of decency, and could be regarded as atrocious, and utterly intolerable in a civilized community. See Appleton, 254 Conn. at 210-11 (requiring conduct that was "extreme and outrageous" for an intentional infliction of emotional distress claim); Martin, 329 F. Supp.2d at 337 (explaining that "[i]n order to state a claim for negligent infliction of emotional distress, the plaintiff

must . . . demonstrate unreasonable conduct of the defendant in the termination process"). However, conduct that is "merely insulting or displays bad manners or results in hurt feelings is insufficient." See Appleton, 254 Conn. at 211 (internal citation omitted).

Hayes claims Orlandi's conduct was extreme and outrageous because Orlandi (1) convinced Hayes to forgo the sales position at Compass; (2) represented to Hayes that he had complete job security; (3) created fictitious job performance deficiencies; (4) terminated Hayes after 24 years of employment; and (5) defamed Hayes's reputation.

Whether a defendant's conduct is sufficiently extreme and outrageous is initially a threshold question of law for the court to determine. See id. at 210. The court finds, as a matter of law, that the examples of Orlandi's outrageous conduct on which Hayes relies do not contravene all possible bounds of decency and cannot be regarded as atrocious and utterly intolerable in a civilized community. See, e.g., DeLeon v. Little, 981 F. Supp. 728, 738 (D. Conn. 1997) (reasoning that rude, inappropriate, or even criminal conduct does not necessarily rise to the level of extreme and outrageous as required under Connecticut common law) (citing cases); see also Miner v. Town of Cheshire, 126 F.

25

Supp.2d 184, 197 (D. Conn. 2000) (finding that Connecticut courts have limited these torts to instances of extremely unreasonable conduct) (citing cases). In addition, as further discussed in Part IV, infra, Hayes has not proffered any evidence showing that Orlandi defamed him.[5] For these reasons, Compass and Orlandi's motion for summary judgment on Hayes's intentional and negligent infliction of emotional distress claims is granted.

IV.   Defamation

Finally, Hayes alleges that Compass and Orlandi defamed him by virtue of certain unspecified statements that (1) Orlandi made to others within Compass, and (2) that Compass listed as reasons for terminating him in an unemployment notice submitted to the State of Connecticut. Under Connecticut law, a claim for defamation "requires proof that defendants published false statements that harmed the [plaintiff], and that the defendants were not privileged to do so." Malik v. Carrier Corp., 202 F.3d 97, 108 (2d Cir. 2000) (internal quotes and citation omitted).

---

[5]   Even though Hayes has raised a factual dispute as to whether Compass's articulated reason for terminating him is mere pretext for age discrimination, see Part I, supra, an allegation of discrimination does not, as a matter of law, constitute an unreasonable risk of causing emotional distress. See Parsons v. United Techs. Corp., 243 Conn. 66, 88-89 (Conn.) (holding that, in the employment context, the mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior).

Applying this standard to the evidence in the summary judgment record here, no reasonable jury could conclude that either Orlandi or Compass defamed Hayes.

Hayes does not provide the specific defamatory statement that Orlandi allegedly made to others within Compass. Instead, he merely alleges that Wedekind told him that he would not be able to seek employment elsewhere within Compass because Orlandi had "poisoned the well." But, Hayes does not specify, even in general terms, (1) what Orlandi allegedly said; and (2) that Orlandi said it to a third-party outside of Compass. See id. (finding that Connecticut affords a qualified privilege to intracorporate communications) (citing Torosyan v. Boehringer Ingelheim Pharm., Inc., 234 Conn. 1 (1995)). Additionally, Hayes fails to address the issue of whether Compass's statement in the unemployment notice was privileged and therefore not actionable. See Petyan v. Ellis, 200 Conn. 243, 247 (1986) (citing Magnan v. Anaconda Indust., 37 Conn. Supp. 38, 42 (Conn. Super. Ct. 1980), rev'd on other grounds, 193 Conn. 558 (1984)). Consequently, the court grants summary judgment in favor of Compass and Orlandi as to Hayes's defamation claim.

27

## CONCLUSION

For the forgoing reasons, defendants' motion for summary judgment [dkt. # 45] is DENIED as to plaintiff's age discrimination claim but GRANTED as to plaintiff's ERISA, intentional and negligent infliction of emotional distress, and defamation claims. Defendant's motion to strike [dkt. # 57] plaintiff's proposed exhibits A-F is DENIED.

So ordered this ⁊ day of October, 2004, at Bridgeport, Connecticut.

Alan H. Nevas,
Senior United States District Judge

28